# YOUNG ET AL. v. WILEY.

[No. 22,736. Filed December 31, 1914. Rehearing denied June 24, 1915.]

1. JUDGMENT. — *Collateral Attack.* — *Record.* — A judgment of a court of general jurisdiction, whether erroneous or otherwise, can not be attacked collaterally, unless it appears from the record that there was no notice, or that the judgment was procured by fraud. p. 455.

2. JUDGMENT.—*Collateral Attack.—Presumptions.*—In order that a judgment may be attacked flor lack of service of summons or notice, the defect must appear from the record, and, unless it does so appear, it must be presumed that summons was served, or at least that the court so found, and that the record so shows. p. 456.

3. VENDOR AND PURCHASER.—*Bona Fide Purchaser.—Judgment.*— Under §§4013, 7482 Burns 1914, §§2970, 4928 R. S. 1881, relating to the rights of *bona fide* purchasers, as against secret trusts and as against fraudulent conveyances, a purchaser of land who claims under a judgment of a court of general jurisdiction, as to which the record discloses no lack of jurisdiction or other infirmity, and who had no notice of any infirmity, has such rights as will protect him against a collateral attack on such judgment on the ground that the return of service was false and that the judgment was procured through fraud on the court. p. 457.

4. VENDOR AND PURCHASER.—*Bona Fide Purchaser.—Inquiry.*—The fact that the father of minor children sued them to quiet his title to certain real estate raises no presumption of fraud requiring a purchaser of the land to ascertain the facts before relying upon the judgment quieting such title. p. 458.

VOL. 183—29

5. VENDOR AND PURCHASER.— *Bona Fide Purchaser.— Notice.*— Mere inadequacy of the price paid for land by the purchaser at a foreclosure sale, and also by the grantee of such purchaser, is not sufficient to charge such grantee with notice of fraud on the part of the mortgagor by which he procured a judgment quieting his title, since the rule that inadequacy of price raises an implication of notice of fraud does not apply to purchasers at involuntary sales. p. 458.

6. VENDOR AND PURCHASER. — *Inadequacy of Price. — Notice of Fraud.*—Inadequacy of the consideration paid for land, in order to charge a purchaser with knowledge of fraud upon which the grantor's title is based, must be such as to shock the conscience into an inference that something is wrong. p. 459.

7. VENDOR AND PURCHASER.—*Bona Fide Purchaser.—Knowledge.*— The purchaser of land is not chargeable with knowledge of the fact that by the will of the original owner the plaintiffs had an interest therein, in the face of a judgment of a court of competent jurisdiction quieting the title in one through whom such purchaser claims. p. 459.

8. VENDOR AND PURCHASER. — *Bona Fide Purchaser. — Notice.* — While one can not rely on a judgment, though regular on its face, if he knows at the time of claiming rights under it that it was procured by fraud, or has notice of facts to put him on inquiry, such notice would not affect his title to land affected by such judgment if he purchased from one who had no notice of the fraud. p. 459.

9. JUDGMENT.—*Collateral Attack.—Fraud.*—Where land was devised to a father and his children, and the father in an action against the children had his title quieted, it is not sufficient in an action by the children to recover the land against a subsequent purchaser claiming through the father to merely characterize his acts as wrongfully and fraudulently done, since he had a legal right to maintain the action and after judgment the merits of the controversy can not be considered. p. 460.

10. INFANTS. — *Collateral Attack on Judgment. — Guardian ad Litem.*—A judgment cannot be collaterally attacked as fraudulent because it was rendered under a mistake of law and hence can not be questioned on that ground because a guardian *ad litem* for infants against whom it was rendered gave no attention to the matter in which such judgment was rendered, since the matter was bound to pass under the very eye of the court, and it is possible that the same judgment would have been rendered had he made a vigorous defense. pp. 460, 462, 463.

11. JUDGMENT.—*Presumptions.*—Where a collateral attack is made on a judgment it will be presumed that evidence to authorize

such judgment was heard, unless the record affirmatively shows that no evidence was given. p. 461.

12. INFANTS.—*Guardian ad Litem.*—*Appointment.*—A court should not appoint a guardian *ad litem* who is suggested by counsel for an opposite party, but the fact that such appointment is made does not render the judgment void, especially where no collusion with the guardian is shown. p. 463.

13. INFANTS.—*Judgment Against.*—*Presumptions.*—It will be presumed in aid of a judgment against infants that the court had the rights of the infants in mind during the trial. p. 463.

14. PROPERTY.—*Title Based on Mistake of Law.*—A title may be grounded on a mistake of law unless such mistake is timely and properly corrected. p. 463.

15. PLEADING.—*Fraud.*—*Conclusions.*—Allegations of fraud which amount to mere conclusions are insufficient. p. 463.

From Madison Circuit Court; *Charles K. Bagot,* Judge.

Action by Alvah G. Young and another against Elijah Wiley. From a judgment for defendant, the plaintiffs appeal. (Transferred from the Appellate Court under §1394 Burns 1914, Acts 1901 p. 565.) *Affirmed.*

*Gavin, Gavin & Davis, Smith & Cambern* and *J. T. Arbuckle,* for appellants.

*Erastus W. McDaniel, Conner, Conner & Christman* and *Wallace Morgan,* for appellee.

MYERS, J.—This is an action brought November 1, 1905, by appellants, children of Sebastian Young, deceased, against appellee, to declare void a judgment affecting the title to real estate, and to recover its possession. The complaint is in five paragraphs, to each of which a demurrer was sustained, and that ruling is the error here assigned.

The first paragraph alleges that on and prior to October 23, 1888, one Lewis Young was the owner of a described 160-acre tract of land in Rush County, Indiana, of which he died seized in fee simple, leaving a will by which it was provided as follows: ''I direct that my son Sebastian Young shall have the west eighty acres of my land with all the improvement thereon, and if he should die before his

present wife does, then it shall go to his children.'' That the will was duly probated November 9, 1888, and was never contested, or set aside. That at the time the will was probated, Sebastian had two children living, appellants here. That prior to the execution of the will, Lewis Young had and entertained a violent dislike, prejudice and hatred for the wife of Sebastian, and declared and gave out that he intended making his will in such way and manner that she should never receive any of his property. That after the death of Lewis Young, Sebastian with his wife and said children, continued to reside on the real estate until January, 1892. That on December 19, 1888, said Sebastian instituted suit in the Rush Circuit Court against appellants for the alleged and pretended purpose of obtaining a construction of the will, and to quiet his title to the 80-acre tract, alleging the foregoing facts, and alleging further that it was the testator's intention and desire to devise the land, describing it, to him in fee simple, but that the language of the will is meaningless, and casts a cloud on his title, and prayer that the will be construed so as to devise the land to him in fee simple, and that the cloud be removed, and the title quieted in him, and for all other proper relief. That a summons was duly issued for appellants, but was never served on either of them; that on January 17, 1889, the cause was called for trial, and a guardian *ad litem* was appointed by the court, for appellants, who filed an answer of general denial, and on the same day the court rendered judgment in favor of said Sebastian, quieting the title to the real estate in him. That at that time, Della Lawson was eighteen and Alvah Young seven years of age; that they were living with their father as members of his family, and under his complete control and dominion; that they had no experience in business, knew nothing of court proceedings, or the manner in which they were carried on, or what a summons to appear in court meant, and knew nothing of the terms of the will or of their rights thereunder, or of the pendency of

the suit; that neither had any guardian, and they depended solely on their father to look after their interests; that when the cause was called, their father selected a member of the Rush County bar as guardian *ad litem* for them, and the court made the appointment; that the guardian had no knowledge of the nature of the action, or the effect on their interests, and accepted the appointment with the understanding and belief that his duties were formal, and accepted the appointment to accommodate the plaintiff. That the answer of the guardian *ad litem* was prepared by the attorneys for their father, and was filed by them; that the guardian *ad litem* gave no attention to the suit, and took no steps to protect their interests; that no evidence was offered or heard on the trial, and hearing was had and judgment entered quieting the title, in the absence of the guardian *ad litem*, and with no one present representing appellant's interests; that the complaint in that action did not state facts sufficient to constitute a cause of action against them, nor authorize the court to quiet title in Sebastian Young, but no objection was made thereto, nor any defense interposed on account of their minority, and no evidence was given; that the title of said Sebastian was a determinable fee, and upon his death before the death of his wife, the fee simple vested in them; that the judgment was rendered outside the issues, and without jurisdiction over them; that it was fraudulently procured by said Sebastian, and the court was deceived and misled, and was fraudulently and wrongfully procured to enter the judgment, and that it is void; that said Sebastian fraudulently and wrongfully procured the judgment for the purpose of fraudulently and wrongfully depriving appellants of their interest in the real estate; that on December 24, 1889, said Sebastian, his wife joining him, executed a mortgage on the real estate, to secure an indebtedness of $1,600; that a foreclosure proceeding was instituted, and resulted in a judgment of foreclosure and sale, at which the real estate was bid in by one Crane, and on

May 1, 1894, a deed was executed to Crane, who in June, 1894, conveyed to appellee, who has since been in possession, claiming to own the land. That said Sebastian died August 3, 1905, leaving surviving a widow, who was his wife at the time the will was made; that appellants did not know of the suit instituted by their father until after his death, and until a short time before bringing this suit; that they have demanded possession, which was denied, appellee claiming to be the exclusive owner. Prayer that the pretended judgment quieting title in their father be set aside, and declared void, and their title quieted, and damages for being kept out of possession in a named sum, and for all other proper relief.

The second paragraph of complaint is substantially the same as the first, except that reference to any dislike of the wife of Sebastian is omitted, and it is alleged that Lewis Young had but one son Sebastian living at the time the will was executed, and no reference is made to any lack of service of summons on appellants, and that the plaintiff in that action through his attorneys, wholly and completely controlled the management, and represented both sides of the cause, and procured the guardian *ad litem* to be appointed as a matter of form, and procured a judgment to be taken in his absence, fraudulently and wrongfully, for the purpose of deceiving and misleading the court. It is then alleged that Crane the purchaser at the sheriff's sale, at the time of, and before his purchase had knowledge of the minority of appellants, and of their interest in the real estate, but is silent as to any notice to or knowledge by appellee of the other allegations of the paragraph.

The third paragraph is similar to the first, except that it is alleged that Sebastian Young through his attorneys controlled and represented both sides of the cause, and deceived and misled the court wrongfully and fraudulently, for the purpose of defrauding appellants; that Crane purchased the land on foreclosure for $1,900, and sold it to

appellee for $2,100, and that it was then worth $5,000, and at the death of Sebastian Young was of the value of $8,000; that both Crane and appellee at the time of their respective purchases, had knowledge of the minority of appellants, and of their interest in the land, but it is not alleged that either of them had any knowledge of the other facts alleged in the paragraph.

The fourth paragraph is similar to the second except that it alleges that the mortgage was made to Crane, and that Crane and Sebastian Young had at the time of the execution of the mortgage and the purchase at sheriff's sale, and appellee had at the time of the purchase, knowledge of the minority of appellants, and of their interest in the real estate, and of all the facts alleged as to the manner and means by which the judgment was obtained, and that it was obtained by fraud as alleged therein.

The fifth paragraph is similar to the first and third, except that it is alleged that Sebastian Young controlled both sides of the case, and that the judgment was rendered without any sufficient complaint, was without the issues, and without jurisdiction of the persons of appellants, and procured by deceiving and misleading the court, wrongfully and fraudulently. It is also alleged in this paragraph that the land was worth $5,000 at the time of the purchase by Crane, and $8,000 at the time of the purchase by appellee, and that the latter, and Crane and Young, at the time of the purchases, each had full knowledge of the minority of appellants, and of their interest in the real estate, and of all the facts therein alleged, as to the manner and means by which the judgment was procured, and that it was obtained by the fraud therein alleged.

It is unnecessary to determine what the interest of Sebastian Young was. The question was submitted to a court of general jurisdiction, which was called on to determine by the construction of the will, what that interest was, and the court did determine it. Wheth-

er rightly or wrongly, is immaterial at this time, pro-
2. vided it obtained jurisdiction of the parties in in-
terest, or now claiming an interest, to wit, appellants,
unless the record shows there was no notice, or that judg-
ment was procured by fraud by which the court was mis-
led, and appellee had notice of, or is chargeable with fraud.
It will be noted that as to the second, fourth and fifth para-
graphs it is not alleged that appellants were not served with
summons, but their failure to be properly represented is
attempted to be accounted for. As to the first and third
paragraphs, it is alleged that summons was duly issued, but
was not served on either of them. If the record in that
cause fails to show service of summons on appellants, we
might have a different question, but in order that a judg-
ment may be attacked for lack of service of summons, or
notice, it must appear what the record shows. *Miedreich*
v. *Lauenstein* (1909), 172 Ind. 140, 143, 86 N. E. 963, 87
N. E. 1029. We are bound to presume that summons was
served, or at least that the court so found, and that the
record so shows. *Adams School Tp.* v. *Irwin* (1897), 150
Ind. 12, 49 N. E. 806.; *Weiss* v. *Guerineau* (1887), 109 Ind.
438, 9 N. E. 399. If a false return was procured, and ap-
pellee had notice of that, or was not a purchaser from one
without notice, we should have another question which is
not here, as to the first and third paragraphs, which make
no allegations as to notice to or knowledge by appellee of
the procurement of a false return, or of the alleged fraud.
As the case stands on the subject of jurisdiction over the
persons of appellants, in neither paragraph is there any
pretense of showing what the record shows on the subject
of service, and where there is jurisdiction of the subject-
matter, in a court of general jurisdiction, unless it affirma-
tively appears from the record itself, that there has not
been jurisdiction acquired of the person, or that jurisdic-
tion is wanting, the judgment is not void on account of
some collateral matter which entered into it, which does

not appear from the record, and in face of those conditions, we are. bound to assume that the record does show service. *Friebe* v. *Elder* (1914), 181 Ind. 597, 105 N. E. 151, and cases cited; *Larimer* v. *Krau* (1914), 57 Ind. App. 33, 103 N. E. 1102, 105 N. E. 936, and cases cited; *White* v. *Suggs* (1914), 56 Ind. App. 572, 104 N. E. 55.

It is not enough as against appellee, that Sebastian Young procured the judgment by fraudulent means, or by misleading the court. That fact, if it be a fact, does not appear from anything apparent from the record, under the allegations of the complaint, and the cases relied on by appellants (*Thompson* v. *McCorkle* [1894], 136 Ind. 484, 34 N. E. 813, 36 N. E. 211, 43 Am. St. 334; *Cotterell* v. *Koon* [1898], 151 Ind. 182, 51 N. E. 235; and *Burnett* v. *Milnes* [1897], 148 Ind. 230, 46 N. E. 464), have no bearing on the question here. In the Thompson case the complaint shows on its face what the record shows, and the record was held itself to show affirmatively that no notice had been given, and to the same effect is *Clark* v. *Hillis* (1893), 134 Ind. 421, 34 N. E. 13. In the Cotterell case the action was against the man who was alleged to be guilty of the fraud, and not as here, against a third person, as to whom it is not alleged in either the first or third paragraphs of complaint that he was in any way a party to the alleged fraud, or had any notice or knowledge of it, or anything to put him on inquiry. So too in the Burnett case, the action was against the man who committed the fraud, but that is a very different question from the one presented here by the first and third paragraphs of complaint, which, if against Sebastian Young, or one having notice or knowledge of the alleged fraud, might take him out of the category of an innocent purchaser. But so far as those paragraphs are concerned, there is no allegation of notice to appellee of the alleged fraud, and he claims under a judgment of a court of general jurisdiction, as to a subject-matter over which it had jurisdiction by law, and in which it does not appear ·

that the record of the judgment discloses that it had not acquired jurisdiction of appellants, or that there was any infirmity in it. Nothing is alleged to take appellee out of the category of an innocent purchaser, and as such he has rights which cannot be ignored. §§4013, 7482 Burns 1914, §§2970, 4923 R. S. 1881; *Fletcher* v. *Peck* (1810), 6 Cranch 87, 3 L. Ed. 162; *Blumenthal* v. *Tibbits* (1903), 160 Ind. 70, 66 N. E. 159; *Hedrick* v. *Hall* (1900), 155 Ind. 371, 58 N. E. 257; *American Varnish Co.* v. *Reed* (1900), 154 Ind. 88, 55 N. E. 224; *Pugh* v. *Highley* (1899), 152 Ind. 252, 53 N. E. 171, 71 Am. St. 327, 44 L. R. A. 392; *Majors* v. *Craig* (1896), 144 Ind. 39, 43 N. E. 3; *Craig* v. *Major* (1894), 139 Ind. 624, 35 N. E. 1098, and authorities cited; *Jones* v. *Crowell* (1896), 143 Ind. 218, 42 N. E. 612; *Brake* v. *Payne* (1894), 137 Ind. 479, 37 N. E. 140; *Scott* v. *Davis* (1889), 117 Ind. 232, 21 N. E. 39; *Indiana, etc., R. Co.* v. *Bird* (1888), 116 Ind. 217, 18 N. E. 837, 9 Am. St. 842; *Milner* v. *Hyland* (1881), 77 Ind. 458; *Burton* v. *Reagan* (1881), 75 Ind. 77; *Rooker* v. *Rooker* (1881), 75 Ind. 571; 2 Freeman, Judgments (4th ed.) §509.

It is the theory of appellants as we understand it, that the facts of the relationship between Sebastian Young and his children, and their ages, were sufficient to raise

4. a presumption of fraud, and call for inquiry. The position is not tenable. The father had a right to bring the suit, and to make his children defendants. Whether the judgment was right or wrong, we need not, and do not determine. It was sufficient that he had the right to bring the suit, and the proceeding on its face being regular, that was as far as a purchaser need go. There was nothing to put him on inquiry by the fact of relationship, or from the record. Nor is there in the first paragraph any

5. allegation as to the value of the land, or the price paid to put appellee on inquiry, if that were sufficient to do so. In the third paragraph, allegations are made as to the value of the land, and the price paid by

appellee, and by his vendor Crane, but it is averred in that paragraph that the land was mortgaged for $1,600 in December, 1889, and sold to Crane on a foreclosure sale, to pay that debt, and he received a deed in, May, 1894, and then sold to appellee June, 1894, for $2,100. The rule in regard to the price for which land is sold raising an implication of notice of fraud, does not apply to purchasers at sheriff's or other involuntary sales. *Beadles* v. *Miller* (1872), 9 Bush. (Ky.) 405; *Stockett* v. *Taylor* (1849), 3 Md. Ch. Dec. 537; 1 Devlin, Real Estate (3d ed.) §428. Crane was apparently entitled to get his money out of the land, and if he was content to receive $2,100 for it, and appellee bought in good faith, and the contrary is not alleged, he was entitled to do so, unless the price under all the circumstances, was such as to lead to more than the inference that he was obtaining a good bargain. It must be such as to shock the conscience into an inference that something was wrong, but on its face the consideration is not only valuable, but considerable, and the fact that Crane, as is alleged, had knowledge of the alleged fraud is not imputable to appellee. Wade, Notice (2d ed.) §61; 2 Devlin, Real Estate §814 and note. The allegation in the second paragraph that at the time of the purchase by Crane and appellee, they had notice of the minority of appellants, and their interest in the property in case the wife survived Sebastian Young, are of no force in face of a judgment which had divested that interest, and the fact that they were minors was immaterial, if the judgment was valid, as it appears on its face to be, for aught that here appears. The first, second and third paragraphs are clearly insufficient. One can not rely on a judgment even though regular on its face, if he knows when he claims to have acquired rights under it, that it was procured by fraud, or there is sufficient to put him on inquiry, and that inquiry would lead to knowledge, unless he takes from one who has no notice, because one pur-

chasing without notice, or one purchasing with notice from one without notice, will take a good title. Wade, Notice (2d ed.) §§61, 62; 2 Devlin, Real Estate §§746, 747.

Coming to the fourth and fifth paragraphs of complaint, and admitting as true all facts properly alleged, it is shown that Sebastian Young for the purpose of divesting any rights in his children, arising under the will, instituted an action to have the will construed, so as to vest title in him solely. To characterize this as wrongfully and fraudulently done, is of no force. It was a legal right he had, and it was unaffected by general charges of a fraudulent motive. The fraud alleged, if any is alleged, is in the cause of action itself, as to the merits of the controversy, and that is not available after judgment. 1 Freeman, Judgments (4th ed.) §289; 2 Freeman, Judgments (4th ed.) §489. Of course that question is distinct from actions for relief in equity, or on the question of estoppel. 1 Freeman, Judgments (4th ed.) §250.

That a guardian *ad litem* selected by Young was formally appointed by the court, and that the guardian gave no attention to the matter, and it was heard in his absence, and no defense made, is made to appear in these paragraphs. No collusion with, or charge of wrongdoing on the part of the guardian is suggested, other than inattention. Suppose the guardian had made a vigorous defense, and the court had adjudged the same as it did? Could the cause of action have been claimed as fraudulent? Clearly not. If there was wrong at all, the wrong was in the decision made, and it is not intimated that it was not the solemn, and unbiased judgment of the court. Various allegations are made as to what Young did, which were claimed to have deceived and misled the court as to the rights of appellants, and wrongfully and fraudulently procured the court to enter the judgment it did, for the purpose of depriving appellants of their interest in the property they would acquire in the event of his death before that of his wife, and that

Crane and appellee knew these things at the time of their respective purchases. What do these allegations mean, and what can they mean? It is not alleged how the court was misled or deceived by anything that Young or his attorneys said or did, unless it could be said that the court was misled and deceived as to the law, or that any other judgment would have been entered than was rendered. Mistake or being misled or deceived as to the law, will not authorize setting aside a judgment, for obvious reasons. For attorneys or parties to obtain or procure from a court a ruling or judgment favorable to their contention, where there is no suppression, concealment or misrepresentation of the facts, or some improper influence upon, or improper motive or conduct of the court, or overreaching the court, is not fraud, it is merely a mistake, or error of law. There would be an exception, if parties are misled by the act of the opponent, or corrupt or improper action of a court, prevents a defense from being made, and that in this case is the nearest approach to a charge of fraud, in the face of the allegations of the selection by the plaintiff in that action, and the formal appointment of a guardian *ad litem* for the minors, who gave the case no attention, as alleged, and the allegations as to the control of both sides of the controversy by attorneys for the plaintiff, whereby no defense was made. But these matters were bound to pass under the very eye of the court, and it is not charged that there was any collusion with the guardian, much less with the court. The allegation that no evidence was given, will not be heard to contradict the record, unless the latter affirmatively shows that no evidence was given, and as we are not advised what the record shows, we are bound to presume that all the evidence necessary to authorize the judgment was given. Lawson, Presumptive Ev. (2d ed.) 36, note; *Chestnut* v. *Southern Ind. R. Co.* (1901), 157 Ind. 509, 62 N. E. 32; *Wright* v. *City of Crawfordsville* (1895), 142 Ind. 636, 42 N. E. 227; *Keller* v. *Reynolds* (1895), 12 Ind. App. 383,

388, 40 N. E. 76, 280. There were then, as there are now recent cases in this court, holding that where one clause of a will is clear and decisive in fixing an estate or interest, it can not be cut down or taken away by subsequent words, which are not as clear and decisive as the first. *O'Boyle* v. *Thomas* (1888), 116 Ind. 243, 19 N. E. 112; *Bailey* v. *Sanger* (1886), 108 Ind. 264, 9 N. E. 159; *Hochstedler* v. *Hochstedler* (1886), 108 Ind. 506, 9 N. E. 467. These cases may have furnished some basis for the court's decision in the construction of this will, and if it be conceded that it was not a proper construction of these cases, still it was so decided, and in any event, was an error of law, on a question properly submitted to it, and like any other case, titles may be, and are frequently grounded on errors of law, otherwise there might never be any security in titles; that there was haste, or inadvertence, or an erroneous decision, is not enough. *Dunham* v. *Downer* (1858), 31 Vt. 249; *Russel* v. *Slaton* (1868), 38 Ga. 195; *Nicholson* v. *Patterson* (1845), 6 Humph. 394; 2 Freeman, Judgments (4th ed.) §487.

Conceding that the purpose of the testator was to cut off, and prohibit the possibility of Sebastian's wife taking any part of his estate, and supposing that Sebastian felt that the dislike was unjust and unfounded, was it more unfair to his children than to his wife, or possibly less of a fraud on her, to defeat her just expectations, or to leave the matter possibly clouded and uncertain, than to endeavor to procure the constituted tribunal to determine the question, even though it might have been determined against him? The construction the court did give it, became a rule of property, as to the particular property involved in the judgment, and the latter a link in the chain of title. Can this court say in any given case, that more or less should have been done than was done in presenting or in an effort to present, or in omitting to present with such ability as to produce a different result, when the result though possibly errone-

ous, is the solemn judgment of a court, and a mistake of law only? Certainly a court ought not to appoint a guardian *ad litem* in any case, whose appointment is the suggestion of counsel for an opposite party, but it by no means follows that such appointment will render a judgment void, and much less where it does not appear that there was any collusion with the guardian, or that the effect might not have been the same, if he had made vigorous presentation. It can not be presumed that the court did not have the rights of these minors in mind. The presumption is that it did. 1 Freeman, Judgments (4th ed.) §132.

When will the end of attacks on judgments come if that be the rule or the law? The rule would operate in favor of the losing party the same in case of perfectly regular judgments, as in case of irregular or incorrect ones, purely and wholly on the ground that the court had made a mistake of law, into which it was led by the zeal, ability or prominence of counsel. That could be as properly characterized in a pleading as wrongful and fraudulent, as the characterizations here made, and in their last analysis, simply amount to allegations that the court had made a mistake of law, which can not be corrected in the manner proposed in this case. *Thompson* v. *Harlow* (1898), 150 Ind. 450, 50 N. E. 474; *Thacker* v. *Thacker* (1890), 125 Ind. 489, 25 N. E. 595. Rights may be grounded on mistakes of law and titles founded on such mistakes, unless they are timely and properly corrected. 2 Freeman, Judgments (4th ed.) §§509, 510.

The allegations of fraud in the fourth and fifth paragraphs of complaint are principally conclusions, and as to the judgment rendered in the case, the allegations are a challenge of the correctness of that judgment. Irregularities in the procedure before the court are alleged, but they neither go to the jurisdiction of the court over the subject-matter nor the parties in interest, and on the

whole complaint it is apparent that the object is to review the judgment for error of law, so that it is immaterial that Crane and Wiley had notice of such matters as are mentioned in the allegations of the fourth and fifth paragraphs, as amount to allegations of fact, as they are insufficient to overcome the judgment on a question of law.

The court below did not err in sustaining the demurrers to each paragraph of the complaint, and the judgment is affirmed.

Morris, J., did not participate in the decision in this cause.

Note.—Reported in 107 N. E. 278. As to what is direct as distinguished from collateral attack on judgment, see Ann. Cas. 1914 B. 82. See, also, under (1) 23 Cyc. 1090; (2) 23 Cyc. 1079; (3) 39 Cyc. 1697; (4) 39 Cyc. 1710, 1697; (5) 27 Cyc. 1726; (6) 39 Cyc. 1700; (7) 39 Cyc. 1708; (8) 39 Cyc. 1772; (9) 23 Cyc. 1097; (10) 22 Cyc. 704; (11) 16 Cyc. 1075; (12) 22 Cyc. 651; (15) 31 Cyc. 55.