44 P.(2d) 724

**CAUDILL v. CAUDILL et al.**

No. 4029.

Supreme Court of New Mexico.

April 30, 1935.

J. S. Vaught, of Albuquerque, for appellant.

G. L. Reese, Jr., of Carlsbad, T. A. Whelan, of Lovington, and G. L. Reese, Sr., of Roswell, for appellees.

BICKLEY, Justice.

Evylin A. Stagner, on May 8, 1911, made a homestead entry of the land involved in this case by filing her claim therefor in the United States Land Office. On June 13, 1911, she became the wife of E. M. Caudill, Sr., and she and her husband moved upon the land and occupied it as their home until the death of Mrs. Caudill March 21, 1915. With the aid of her husband, Mrs. Caudill established her claim and made final proof so that a patent was issued to her on January 19, 1915, as "Evylin A. Caudill, formerly Evylin A. Stagner."

Mrs. Caudill afterwards died intestate. The sole issue of the marriage was E. M. Caudill, Jr., the appellant, who was born July 15, 1913.

The senior Caudill filed his complaint in the district court in the usual quiet title form, entitled E. M. Caudill v. E. M. Caudill, Jr., No. 2608. Plaintiff alleged ownership of the land in fee simple; that the defendant E. M. Caudill, Jr., made some claim to the lands adverse to plaintiff's estate; that defendant was a minor, followed by the usual quiet title prayer. Summons and a copy of the complaint were duly served upon the defendant who was then about four years of age, and thereafter the court made an order reciting, "It appearing to the court that the defendant is a minor and that Robert C. Dow, Esq., a

lawyer of Carlsbad, New Mexico, is a suitable person to act as guardian ad litem to represent the interests of said minor," and the said Dow was appointed such guardian. Mr. Dow filed an answer as attorney and guardian ad litem for the infant defendant, putting the cause at issue. The case came on for hearing, and upon the evidence adduced the court found and concluded that the lands were "clearly and distinctly the community property" of the plaintiff and his deceased wife, and that under the laws of this state, upon the death of the wife, said lands belonged to the husband (plaintiff), and that he was the owner thereof, and by decree dated May 29, 1917, established the title thereof in the plaintiff against the adverse claim of the defendant.

About fourteen years later the appellant, still a minor, commenced suit by Georgia Stagner Smith, his maternal aunt, as his next friend, making E. M. Caudill, Sr., O. H. Green, Boyd Dudley, and others defendants.

The complaint characterized the first cause of action of plaintiff as being "by way of bill of review" to have declared null and void and to cancel and vacate the final decree aforesaid, and to have the defendant Boyd Dudley decreed to be a constructive trustee of the legal title of the land involved for the benefit of the plaintiff. The second cause of action was an ordinary suit to quiet title in the plaintiff to an undivided three-fourths interest in the lands. The first cause of action is based upon the allegations that the defendant Caudill, Sr., being the father of plaintiff at the time of the decree attacked, stood in the relation of natural guardian to his minor son, Caudill, Jr., and that the suit to quiet title in the father was fraudulent, and that said Caudill, Sr., had procured a false return of service of said suit to be made upon his infant son, and that he had "procured" the appointment of the infant defendant's guardian ad litem, and that said guardian ad litem, "affecting" to act for the infant defendant, was "procured and engaged so to do by the said E. M. Caudill, Sr.," and that said guardian ad litem "filed a pretended answer in said cause." There were other allegations from which we gather that it is charged that the senior Caudill acted collusively with the guardian ad litem to practice a fraud upon the court, and that the said Caudill, Sr., practiced a fraud upon the guardian ad litem by withholding and suppressing from the guardian ad litem and the court "facts affecting, pertinent to and controlling the status and condition of the legal title to the said land, and particularly that plaintiff's mother filed and made said homestead entry on said land on the 8th day of May, 1911, which was prior to the time of her marriage to the said E. M. Caudill, Sr., and that said lands were her separate estate, and that by reason of such concealment the plaintiff herein was deprived of a fair hearing and trial of the issues of law and fact."

It is further alleged in said cause of action that a decree was entered in said cause quieting plaintiff's title, and that thereafter said lands were conveyed to one O. H. Green and by him conveyed to the defendant herein, Boyd Dudley, and that each of the said grantees above mentioned took title to said premises with actual and constructive notice of

the infirmity of the title thereto in E. M. Caudill, Sr.

The allegations of the complaint were put in issue and the defendant Boyd Dudley filed a separate answer in which he admitted the facts alleged regarding entry of the lands in controversy by the plaintiff's mother, and the institution and prosecution of the cause No. 2608. and denied all allegations of fraud. By way of new matter he alleged that he purchased said lands from the defendant O. H. Green relying upon the decree and proceedings in cause No. 2608 in good faith and for a valuable consideration.

The trial court made findings of fact, among which were the following:

"IV. That on the 29th day of May, 1917, the defendant E. M. Caudill, Sr., filed a suit in the District Court of Eddy County, now Lea County, against his minor son, the plaintiff herein, E. M. Caudill, for the purpose of quieting his title to the lands above described, the Complaint therein being in statutory form; that in said cause a summons was duly issued and served upon said minor, E. M. Caudill, and pursuant to law, a guardian ad litem was therein appointed in the person of Robert C. Dow, to represent said minor, and issue having been joined upon the complaint in said cause, said district court, on the 29th day of May, 1917, proceeded to hear said cause upon the merits, and after a full and complete disclosure of all of the pertinent facts relative to the title to said lands, found and adjudged that the property in question was the community property of E. M. Caudill, Sr., and his deceased wife, Evelyn Ada Caudill, and that

upon her death said lands passed to the plaintiff, E. M. Caudill, Sr., without administration, and the title of the said E. M. Caudill, Sr., was ordered quieted and set at rest as against any claims of the minor, E. M. Caudill; that the proceedings in said cause were regular upon their face and that there was no fraud or bad faith on the part of the plaintiff therein, E. M. Caudill Sr., or on the part of the guardian ad litem, R. C. Dow, or on the part of any one, and that any error in the judgment of the court was solely an error of law; and that no appeal was taken from said final decree to the Supreme Court of New Mexico.

"V. That after the rendition and entry of the decree in said cause, E. M. Caudill, Sr., for a valuable consideration conveyed the lands in controversy by warranty deed, to the defendant, O. H. Greene, and thereafter, and on the 2nd day of November, 1926, the said O. H. Greene conveyed said property by warranty deed to the defendant, Boyd Dudley; that the said Boyd Dudley paid value for said lands, relying upon the final decree and proceedings in the said suit to quiet title, and without any notice or knowledge of any infirmity therein.

"VI. The Court further finds that the plaintiff has wholly failed to sustain the allegations of his complaint as to the alleged fraud in said suit to quiet title, and that all of the material allegations of the defendant, Dudley's Answer and cross complaint, have been established by the evidence."

And the court concluded as follows: "From the foregoing findings the Court concludes that the plaintiff is not entitled to recover

herein, and that the title of the defendant, Boyd Dudley, to said lands should be quieted and set at rest as against any adverse claims of the plaintiff."

We conclude that the findings of fact made by the court on behalf of defendants are supported by substantial evidence, and an examination of the record satisfies us that the court was justified in · its finding that the plaintiff failed to sustain the allegations of his complaint as to the alleged fraud in commencing and prosecuting the suit of Caudill, Sr., against his son to quiet title to the real estate involved.

In 46 C. J., in the article on Parent and Child, § 157, it is said: "A father has a right to maintain an action against his minor children, and while such an action should be closely scrutinized, there is no presumption of fraud arising therefrom."

See McKern v. Beck, 73 Ind. App. 92, 126 N. E. 641; Young v. Wiley, 183 Ind. 449, 458, 107 N. E. 278, 283.

■ The case at bar is not one of transaction between parent and child. The status of the parties as heirs of the deceased mother, and the status of the title of the property involved, was fixed by law. · The author of the annotation entitled "Vacation of Judgment Affecting Infant Duly Represented," following Burke v. Northern Pacific R. Co., 86 Wash. 37, 149 P. 335, Ann. Cas. 1917B, page 919, says: "In all cases wherein the question has been raised the courts have held uniformly that an infant is as much bound by a judgment rendered in an action wherein he has been duly represented as an adult, and that the only grounds for

vacating such a judgment are fraud, collusion, mistake or other grounds which will vacate a judgment affecting a person of full age."

A large number of cases are cited in support of this declaration, and we have no doubt of its correctness.

■ Appellant characterizes his action to vacate the former judgment as one "by way of bill of review." Appellant disclaims any purpose to vacate the judgment because of an error of law committed in its rendition, and a bill of review cannot be sustained upon the ground that the court has decided wrong upon a question of fact. Lamy v. Catron, 5 N. M. 373, 23 P. 773.

Appellant plants himself squarely upon the contention that the former judgment was procured by fraud.

As we have seen, the trial court in its finding No. VI correctly stated that the plaintiff had wholly failed to sustain his allegations of fraud.

■ The theory of the appellant, as we understand it, is that the fact of the relationship between Caudill, Sr., and his infant son was sufficient to raise a presumption of fraud. The position is not tenable. The father had a right to bring the suit and to make his child defendant. Whether the judgment was right or wrong we need not and do not determine. It was sufficient that the father had the right to bring the suit, and the proceeding on its face being regular, the infant defendant being served with process and a guardian ad litem being regularly appointed by the court to

represent him, and there being no concealment of the facts by the plaintiff-father, and the court, having the material facts before it, rendered a judgment in an action wherein it had jurisdiction of the subject matter and of the parties. No collusion with or charge of wrongdoing on the part of the guardian ad litem is proved. If there was wrong at all, it was a wrong in the decision made, and it is not intimated that the decision was not the solemn and unbiased judgment of the court. It is not proven that the court was misled or deceived by anything the plaintiff Caudill or his attorney or the guardian ad litem said or did, unless it could be said that the court was misled or deceived as to the law. Mistake or being misled or deceived as to the law will not ordinarily authorize setting aside a final judgment for obvious reasons. For attorneys or parties to obtain or procure from the court a ruling or judgment favorable to their contention where there is no suppression, concealment, or misrepresentation of the facts, or some improper influence upon or improper motive or conduct of the court, is not fraud. It is merely a mistake or error at law.

Not that it makes any difference legally, yet it seems proper to say that the proposition which appellant contends is plain that the title of an unmarried entryman relates back to the time of the entry, and although patent be issued after marriage, the property remains separate property of the entryman, was not so plain when the judgment attacked was rendered as it was after this court first settled the question in this jurisdiction in Citizens' National Bank of Albuquerque v. Ruley, 29 N. M. 662, 226 P. 416, 417, which was decided years after the judgment attacked was rendered.

Prior to that decision, the view was entertained by some lawyers in this state that the doctrine of relation was not applicable so as to fix the character of the property as separate or community, depending on the status of the entryman at the time of entry. The law was not clear on the point in other jurisdictions, and at least one court, the Washington Supreme Court, had held that, under conditions similar to those in the case at bar, the property was community property. Kromer v. Friday, 10 Wash. 621, 39 P. 229, 32 L. R. A. 671. In that case the fifth and sixth syllabi are as follows:

"Where an applicant for a homestead marries after making final proofs, and before the patent issues, upon the issuance of the patent the legal title to the homestead vests in the community. * * *

"A homestead is taken 'by purchase,' within the meaning of the territorial laws relating to community property, so as to vest the same in the community."

It clearly appears from the record that actual settlement on the lands in controversy in the case at bar was not made until after the marriage of appellant's mother and father, and while appellant is doubtless correct in asserting that where formal record entry is made, that is the initiatory step to which subsequent steps relate back regardless of the date of actual settlement, yet there are expressions in the decisions to the effect that the title relates back to the actual settlement. Thus in Citizens' National Bank v. Ruley, su-

pra, in discussing a case cited, we said: "The effect of this decision is to say that the title of the entryman, as between him and any person, wife, child, or another claiming interests under state laws, dates from the time of settlement on the land as a homestead."

Just what was meant by these expressions gave rise to some confusion.

It also appears in evidence in the proceeding attacked that the mother and father always treated the property as community property. It was improved by their joint efforts, used as their domicile, and after his mother received her final receipt, she evidenced the intention to convey the property to her husband, apparently in confirmation of the idea that it was deemed to be community property.

That a husband and wife may change the character of their property from separate to community and vice versa without a written agreement has been asserted by the California courts. See In re Sill's Estate, 121 Cal. App. 202, 9 P.(2d) 243.

It seems not unreasonable that lawyers might entertain the view that under such circumstances the property in question was community property. So, if there could be an implication of bad faith arising from an error of law reflected in the conduct of the parties, and counsel and the court merely because of erroneous contentions presented and decision made, the considerations we have mentioned would tend to rebut such implication.

Can this court say in any given case that more or less should have been done than was done in presenting, or in an effort to present, or in omitting to present, with such ability as to produce a different result when the result, though possibly or probably erroneous, is the solemn judgment of the court, and a mistake of law only?

 The whole proceeding was under the eye of the court, and it cannot be presumed that the court did not have the rights of the minor in mind. The presumption is that it did. Young v. Wiley, supra. This presumption is vindicated in the record in this case.

"Rights may be grounded on mistakes of law, and titles founded on such mistakes, unless they are timely and properly corrected. Freeman on Judgments (4th Ed.) §§ 509, 510." See Young v. Wiley, supra.

 If the judgment is not void or irregular and is rendered after due hearing, and there is no fraud in the cause resulting therein, or is not a default judgment, a proceeding in a district court seeking to cause the court to review and reverse its own decree must be commenced within thirty days after the entry of the judgment or decree. 1929 Comp. St. § 105-801. Prior to this enactment, such control, if any, did not extend beyond the term at which the decree was rendered.

Finding no error in the record, the judgment is affirmed, and it is so ordered.

SADLER, C. J., and HUDSPETH, WATSON, and ZINN, JJ., concur.