312 P.2d 798

Emby KAYE; Samuel T. Goldberg; M. J. McNulty, Jr.; Saul A. Yager and Marian Yager, Plaintiffs-Appellees,

v.

The COOPER GROCERY COMPANY, a Corporation; W. E. Grisso Heirs et al., Defendants-Appellants.

No. 6167.

Supreme Court of New Mexico.

June 10, 1957.

Carpenter & Phelps, Roswell, G. T. Hanners, Lovington, for appellants.

Reese, McCormick, Lusk & Paine, Carlsbad, for appellees.

COMPTON, Justice.

The pertinent facts giving rise to this controversy are as follows: In 1930, Len Dalton and his wife owned the property in question in fee simple. On July 29, 1930, they deeded an undivided one-half interest in the minerals to Dorothy . Heard. This deed was recorded the same day. On the same day she conveyed her mineral interest to W. E. Grisso, whose deed likewise was recorded on July 29, 1930. For 1931, 1932 and 1933, the property was assessed for taxes in the name of Len Dalton. No *separate* assessment was made of the mineral estate.

An agent of the present plaintiffs acquired a tax deed to the property in 1937 based upon the delinquent taxes for the 1931–1933 period. In 1938, the agent filed suit to quiet title to the property in question. W. E. Grisso, owner of the undivided one-half interest in the minerals, was one of numerous defendants. By registered mail, process was sent to Grisso in Enid, Oklahoma. Plaintiff's attorney had secured the information that Grisso's residence was Enid, Oklahoma, from an address list maintained by a Lea County abstract company. Grisso was actually a resident of Seminole,

Oklahoma, although the Grisso Royalty Corporation, controlled by him, had an office in Enid. Certain recorded instruments in Lea County showed the address of Grisso to be Seminole, Oklahoma.

Apparently Grisso failed to receive the notice and service of process mailed to Enid, Oklahoma. A default judgment was taken against Grisso and title to the property was quieted in the plaintiff.

To clear up any uncertainties as to the mineral interests in the property, the present plaintiffs brought this suit in Lea County to quiet title in the mineral estate. Several parties were made defendants, including W. E. Grisso, who alleges that since 1930 he has been, and still is, the owner of an undivided one-half interest in the mineral estate. Judgment in the court below was for the plaintiffs. W. E. Grisso having died shortly after the trial, the case comes to this court on appeal by the Grisso heirs.

Appellants contend that the 1938 judgment quieting title to the property here in question was void for suppression of notice. The court below found against appellants on this point and that finding of fact is supported by substantial evidence.

The controversy concerning notice arises from the fact that the complaint and summons in the 1938 action were mailed to W. E. Grisso in Enid, Oklahoma, when, in fact, he resided in Seminole, Oklahoma, and

certain deeds and leases recorded in Lea County showed his address to be Seminole, Oklahoma. But it should be noted that other recorded instruments gave the address of the Grisso Royalty Corporation as Enid, Oklahoma.

This court in discussing the requirements of notice made the following statement in Owens v. Owens, 32 N.M. 445, 449, 259 P. 822, 823, "It would be taking a liberal view indeed to say that it was intended that one might close his eyes in order to remain ignorant." But the record does not bear out appellants' allegation that the plaintiff and his attorney either suppressed notice or in effect chose to remain ignorant of Grisso's true address. While plaintiff's attorney did not examine the reception books in Lea County, he did utilize an address list maintained by a Lea County abstract company in order to determine Grisso's correct address. This list gave such address as Enid, Oklahoma. The record indicates that attorneys in the area frequently made use of this index in ascertaining addresses. We are not prepared to say that failure to examine reception books in the county clerk's office is in and of itself a lack of due diligence. Diligence is a relative term and must be determined by the circumstances in each case. Campbell v. Doherty, 53 N.M. 280, 206 P.2d 1145, 9 A.L.R.2d 699; Restatement, Judgments § 32 comment f.

Notice in the 1938 suit was mailed to W. E. Grisso in Enid, Oklahoma, by registered mail, return receipt requested. The depositions of two witnesses employed in the United States Post Office in Enid, Oklahoma, in 1938, are substantially to the effect that mail addressed to W. E. Grisso in Enid would have been placed in the box of the Grisso Royalty Corporation. Moreover, the correspondence between the plaintiff and his attorney relative to the 1938 suit indicates a good faith attempt on the part of each to secure the addresses of defendants.

Appellants alleged fraud on the part of plaintiff's attorney in withholding or suppressing evidence in the 1938 suit. The trial court concluded that appellants failed to prove a suppression of evidence. We agree with this conclusion and do not believe that the assertion merits extended discussion. Suffice it to say the burden is upon the party alleging fraud to establish its existence by clear and convincing evidence. Lumpkins v. McPhee, 59 N.M. 442, 286 P.2d 299; Frear v. Roberts, 51 N.M. 137, 179 P.2d 998. Appellants have failed to carry this burden.

We come now to appellants' contention that the judgment in the 1938 quiet title was void because the tax deed did not cover the undivided mineral interest, and, therefore, the court was without jurisdiction. It may be assumed for the moment that the tax deed did not carry the mineral estate. However, it does not follow from this that the court lacked jurisdiction.

The plaintiff in the 1938 quiet title action proceeded under the statutory authority of § 22–14–1, N.M.S.A., 1953 Comp. This section provides as follows:

"An action to determine and quiet the title of real property may be brought by anyone *having or claiming an interest therein* * * *." (Emphasis added.)

By virtue of the tax deed the plaintiff was claiming the entire interest in the surface estate and the entire interest in the mineral estate. W. E. Grisso was joined as a defendant for this reason. His sole interest was in the mineral estate. Even after a severance has occurred, a complaint in a quiet title suit describing the property and alleging a fee simple ownership is equivalent to a claim of ownership of the fee in the surface and in the minerals. If a plaintiff's claim is solely to the surface estate, then his complaint should so state. If his claim is solely to the mineral estate, then his complaint should so state.

■■ The action to quiet title is a substantive adjudication of title. The judgment is self-operating, that is, by the judgment itself the interest is established. In such an action all matters affecting the title of the parties to the action may be litigated and determined, and the judgment therein is final and conclusive. 2 Black, Judgments § 697 (2d Ed.).

■ In the 1938 suit the court had jurisdiction over the subject matter. Although there must be jurisdiction in the court in order to make its judgment a bar, it is not necessary that such judgment should be free from error. 2 Black, Judgments § 680. Such was the holding in Bowers v. Brazell, 27 N.M. 685, 205 P. 715; Id., 31 N.M. 316, 244 P. 893. See also Caudill v. Caudill, 39 N.M. 248, 44 P.2d 724. The force of a former judgment as an adjudication of the rights of the parties thereto is not affected by the fact that the judgment was erroneous. The judgment must stand until corrected in an appropriate way. In over 15 years Grisso failed to move to set aside the default judgment. In fact he never took such affirmative action.

■ Public policy calls for the protection of judgments in order to secure termination of litigation and the finality of judicial determinations. 1 Freeman, Judgments 602 (5th Ed.).

We might well conclude our opinion here, affirming the judgment, but due to the public importance of the question presented, we go one step further. Appellants contend that the tax deed issued in 1937 did not cover the undivided one-half mineral interest severed by a recorded deed prior to the 1931 tax year. In support of this position appellants maintain that the New Mexico statutes contemplate the separate assessment of fractional undivided mineral interests, and that since the appellants' undivided one-half

interest had not been separately assessed, the tax deed did not carry this interest.

■ There is a split of authority as to whether a separate assessment can be levied against fractional undivided interests. On the one hand there is the following view expressed in Hager v. Stakes, 116 Tex. 453, 294 S.W. 835, 842:

> "Real estate is ordinarily taxed as a unit; yet, where there have been severances by conveyance, exception, or reservation, so that one portion of the realty belongs to one person and other portions to others, each owner should pay taxes under proper assessment against him of the portion owned by him. The fact that a portion may consist of minerals or of a fractional interest therein makes no difference."

The contrary position was adopted by the Pennsylvania court in Appeal of Baird, 334 Pa. 410, 6 A.2d 306, 308, where the court stated as follows:

> "We are here concerned with the assessment of the oil and gas as a separate estate, but the appellant demands a further division of the assessment based not on a severed estate, but on a separate ownership in a distinct estate. No sound reason has been suggested nor have we been able to find any statutory or other authority for such a multiplication of assessments as is here demanded by the appellant. Expressed in concrete and simple form the position of the appellant amounts to the assertion that if two or more persons are the owners of a fee simple, each may insist that his undivided interest be separately assessed. It has not been uncommon for an undivided interest in an oil and gas lease to amount to less than 1⁄300th of the whole."

The above statement pinpoints the difficulty inherent in separately assessing fractional undivided interests. An unreasonable burden would be placed upon the taxing authorities. Nor do we find any statutory authority for separately assessing undivided interests. Section 72–2–22, N.M. S.A., 1953 Comp., provides: "Each tract of land shall be valued and assessed separately." Section 72–2–24, N.M.S.A., 1953 Comp., provides as follows:

> "If any tract of land is claimed by several persons, having or claiming undivided interests therein, and the same is not listed for taxation by any one, the assessor shall make an estimate of the value of such tract and list and assess the same to, Unknown Owners, designating the property by its name as commonly known."

The above statutory provision confers no authority to separately assess fractional undivided interests. It provides for the assessment of the tract as an entirety. But simply because fractional undivided inter-

ests are not to be assessed to their individual owners does not mean that the tax deed in this case carried the undivided mineral estate of the appellants. A portion of the trial court's first conclusion of law is as follows:

"Where there has been only a partial severance of a mineral estate in lands, the entire mineral interest may either be assessed by valuing it as a part of the surface estate or a separate assessment may be made of the surface estate and a separate assessment may be made of the entire mineral estate."

■ We do not completely agree with the above conclusion. We are of the opinion that where there has been only a so-called "partial severance" of the mineral estate, nevertheless, the principle as set forth in Sims v. Vosburg, 43 N.M. 255, 91 P.2d 434, is applicable, and there must be a separate assessment of the mineral estate as an entirety.

■ The law is settled in this jurisdiction that minerals in place may be severed from the surface; that when so severed they constitute a separate estate. Duvall v. Stone, 54 N.M. 27, 213 P.2d 212; Terry v. Humphreys, 27 N.M. 564, 203 P. 539. Accordingly this court held in the Vosburg case that where the entire mineral estate has been conveyed by the surface owner and the mineral deed has been recorded prior to the assessment for the tax year, the owner of the mineral estate will not lose his interest through a tax sale unless the mineral estate has been separately assessed and the sale is had for the purpose of recovering delinquent taxes assessed against the mineral estate. For the requirement as to recording see Sawey v. Barr, 52 N.M. 358, 198 P.2d 801. See Emery, The Doctrine of Severance of Estates and the Effect of Tax Titles Thereon, 22 Rky.Mt.L.Rev. 523.

In accord with the doctrine of Sims v. Vosburg, supra, are decisions in at least six other jurisdictions. Huffman v. Henderson Co., 184 Ark. 278, 42 S.W.2d 221; Mitchell v. Espinosa, 125 Colo. 267, 243 P.2d 412; Washburn v. Gregory Co., 125 Minn. 491, 147 N.W. 706, L.R.A.1916D, 304; Kerncamp v. Wellsville Fire Brick Co., 237 Mo. App. 457, 170 S.W.2d 692; Yoss v. Markley, Ohio App., 68 N.E.2d 399; Ohio Oil Co. v. Wyoming Agency, 63 Wyo. 187, 179 P.2d 773. See Snyder, Taxation and Severed Mineral Estates, 27 Dicta 225.

This court concluded in the Vosburg case that New Mexico statutory provisions require the separate taxation of severed mineral estates, and that the public policy of this state is to tax separately the severed mineral rights from the remainder of the fee when in different ownerships. This conclusion was not intended to be limited by the statement that the taxing authorities had not taken into consideration the severed mineral interests in the property in valuing

it for taxes. Each estate *must* be separately assessed.

We believe that our statutory taxing provisions require the same result where the property owner conveys an undivided interest in the mineral estate and retains the surface and an undivided interest in the minerals. After the conveyance of a fractional undivided interest in the minerals the *entire* mineral estate should be separately assessed and taxed as a unit. In this case no such separate assessment of the mineral estate was made. For some purposes there is undoubtedly a "partial severance." See 1 Oil and Gas Reporter 447, 449. But for assessment purposes such a conveyance is to be considered a complete severance of the mineral estate.

A contrary holding would not only do violence to the basic principle enunciated in Sims v. Vosburg, supra, but it would also be undesirable. The difficult task of determining whether or not the taxing authorities took into consideration the value of the mineral estate in the one assessment to the owner of the surface would be necessary in every instance.

The surface owner who has retained an undivided mineral interest becomes a tenant in common *as to the mineral estate* with his transferee of an undivided mineral interest. As tenants in common each has the duty to pay the entire assessment on the mineral estate with a right of contribution against his cotenant for a proportionate part. Haden v. Eaves, 55 N.M. 40, 226 P.2d 457.

In the case under consideration, there had been a complete severance of the surface estate from the mineral estate for assessment purposes. It follows that the sale of the property for delinquent taxes was a sale of the surface estate only.

For the above stated reasons the judgment of the court below decreeing that the plaintiffs are the owners in fee simple of the mineral estate in the described property is affirmed.

It is so ordered.

LUJAN, C. J., SADLER and KIKER, JJ., and HENSLEY, Jr., D. J., concur.

McGHEE, J., not participating.