CHARLES HILT *et al.* Appellees, *vs.* H. R. HEIMBERGER, Admr., Appellant.

*Opinion filed June 18, 1908.*

1. SUMMONS—*when sheriff's return may be contradicted.* Where rights of third persons have been acquired in good faith the return of an officer showing service of summons cannot be contradicted; but as against parties acquiring rights with notice the return is not conclusive and may be impeached by clear and satisfactory evidence.

2. EQUITY—*when equity may set aside judgment at law.* In the absence of intervening rights, equity may set aside a judgment by default in assumpsit, even though the sheriff's return shows service, where the evidence shows that the deputy called defendant aside when in court and read to him a certain summons which defendant was expecting and also the assumpsit summons; that he read so low defendant did not know what he said; that he delivered a copy of the first summons to the defendant but no copy of the assumpsit summons, and that neither defendant nor his attorneys knew of the assumpsit suit until defendant's land was advertised for sale.

3. APPEALS AND ERRORS—*decree setting aside judgment at law is appealable.* A decree by a court of equity setting aside a judgment in assumpsit, allowing the defendants to plead and restraining further proceedings to collect the judgment is a final, appealable order, where the right to set aside such judgment is questioned.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. CHARLES T. MOORE, Judge, presiding.

Charles Hilt and Henry Hilt, appellees, each filed a separate bill of complaint against appellant and the sheriff of Madison county, Illinois, asking that they be enjoined from collecting two judgments for $1500 each, entered by default in the circuit court of said county at its May term, 1906, and praying that upon final hearing said judgments be either permanently vacated or set aside and appellees allowed to plead and defend said suits on their merits. The two bills of complaint are alike, and the date and amount of the judgments and the circumstances under which they were entered are the same in every respect. The causes were consolidated and tried together, both in the circuit court and the Appellate Court, by agreement, except that a separate decree was entered in each cause. The cases are consolidated here also and heard as one.

The bills allege that Joseph Hilt, the father of appellees, June 10, 1900, being the owner of a certain farm of one hundred acres in Madison county, Illinois, conveyed the same to appellees and their brother, Stephen Hilt, reserving a life estate to himself; that said conveyance was a gift; that Joseph Hilt died March 3, 1905, and appellant, H. R. Heimberger, was appointed administrator; that on May 5, 1906, appellant filed in the circuit court of Madison county, Illinois, a bill in chancery against appellees and Stephen Hilt for a vendor's lien against said land, alleging that the conveyance by said Hilt to his three sons was not a gift but a sale for a consideration of $5000, to be paid in equal parts, after said Joseph Hilt's death, to his administrator, and that said $5000 had never been paid; that May 15, 1906, appellant instituted in the same court two suits in assumpsit and in each case filed a declaration only on the common

counts; that affidavits of plaintiff's attorney in the said assumpsit suits were filed, which stated, in substance, that the demand was for one-third of the purchase price of certain farm lands, together with certain personal property appropriated and purchased from moneys left by said Joseph Hilt to each defendant. The bills further allege that the chancery summons in said vendor's lien suit was served on both appellees May 15, 1906, but that the said defendants had never been served with summons in the assumpsit suits, or if served, by reason of misunderstanding and mistake and believing that they had only been served in the vendor's lien suit, they made no defense to the assumpsit suits. The bills further alleged that the respective defendants not only had a defense on the merits on the ground that their father gave this farm to them, but also that the Statute of Limitations and the Statute of Frauds could both be pleaded as a bar in each of the assumpsit suits.

Appellant filed answers in both of these suits, claiming that the service in the assumpsit suits was legal in every respect, and denying that the complainants had a good and meritorious defense or could rightfully plead the Statute of Limitations or the Statute of Frauds. A general replication was filed in each case. After a hearing the circuit court entered a decree setting out its finding at length and ordering that the judgment in each of said assumpsit suits be set aside upon appellees paying all costs to date; that upon such payment each appellee should be allowed to plead and defend in his suit the same as if said default had never been entered, and that the sheriff be restrained from further proceeding to advertise and sell said real estate or to collect said judgments. On appeal to the Appellate Court the decrees were affirmed.

E. B. GLASS, and B. G. WAGGONER, for appellant.

WARNOCK, WILLIAMSON & BURROUGHS, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The chief contention urged by appellant is that a court of equity is without authority to interfere to set aside the judgments in question; that on the facts shown in this record appellees were each properly served in the assumpsit suits, and having neglected to make their defense cannot have the aid of equity to relieve them from the consequences of such failure. In order to pass on this question it is necessary to review the evidence as to the question of service in the assumpsit cases.

It appears that shortly after the death of Joseph Hilt litigation of various kinds arose between appellees and their sisters concerning the division of their father's estate, which had been probated in St. Clair county. The land in question is situated in Madison county. Appellees, previous to the litigation now in question, had been cited to appear before the probate court of St. Clair county to answer certain inquiries with reference to property they might have, belonging to said estate. A partition suit with reference to property not here in question had been instituted against appellees in the circuit court of Madison county. The attorneys of appellees, who did not live in Madison county, had employed a law firm at Edwardsville, the county seat of Madison county, to watch the docket for them in the partition suit and to file any pleadings that might be sent them. The Edwardsville attorneys had never talked with appellees or had anything to do with the trial of the cases and were only employed in the limited manner suggested. The partition suit was set for hearing on May 15, 1906. Previous to that date the respective attorneys of appellees and appellant had interviews about the settlement of the litigation, and appellant's attorneys testified that they told the attorneys for appellees that they expected to start a vendor's lien suit and also assumpsit suits. Appellees' attorneys state that they were told that a vendor's lien suit was to be started but were told nothing as to the assumpsit

suits. Appellees were told by their attorneys shortly before May 15, 1906, that when they went to Edwardsville concerning the partition suit they would undoubtedly be served with a summons in a vendor's lien suit, but the evidence is clear that they were told nothing with reference to the assumpsit suits. On May 15, while the partition suit was in progress in the circuit court at Edwardsville and appellee Charles Hilt was seated with his attorneys at one of the tables provided for counsel in the court room, a deputy sheriff of the county called him a few feet to one side, read to him in a low tone certain papers, and gave him a copy of the summons in the vendor's lien suit. Hilt testified that the deputy read to him in so low a tone that he did not understand what was said; that he expected to be served in the vendor's lien suit and understood the names Hilt and Heimberger. The deputy testified that he told Charles Hilt that he was serving him with summons in two suits, but Hilt insists that he did not so understand. The deputy testifies, however, that while he was reading the summons the presiding judge looked over towards him, and that he stopped for a moment and then shortly after went on reading, apparently in a lower tone. One of Hilt's counsel, who was sitting at the table with him, noticed that he had been called aside, and just as the deputy sheriff finished reading and handed Hilt the copy, the attorney stepped back a few feet to where they were and asked Hilt what the trouble was, and Hilt answered,—loud enough, as the lawyer thought, for the deputy sheriff to hear,—that he was being served with a summons in the vendor's lien suit about which they had talked. After the deputy had served Charles Hilt he served the other appellee, Henry Hilt, in substantially the same manner, in another part of the court room. Henry Hilt's testimony is to the effect that he did not hear what was read to him; that he only caught, now and then, a word, and that as the copy was served on him in the vendor's lien suit he thought that was the same pro-

ceeding in which the summons was being read to him. The wife of each appellee was also served in the vendor's lien suit, in the court room. Several witnesses were called on the question of service by both sides to this litigation. None of them heard what was read by the deputy sheriff, and some of them were not over eight or ten feet away. Two young ladies, seventeen or eighteen years old,—one a step-sister of the appellees and the other a niece,—testified that they saw the deputy read from two papers to each of the appellees. One of the attorneys for appellant claims that the deputy read loud enough so as to disturb the court proceedings, and on that account he looked back and saw him reading. Apparently all the witnesses to what happened at the time of the alleged service of the summons are interested in this litigation, either as attorneys or as relatives of the parties litigant. We think, however, that the evidence as to what took place is in substantial agreement, except as to just what and how loud the deputy sheriff read. No one outside of himself claims that he read loud enough so they could hear what he read.

Counsel for appellees were given the copies of the summons in the vendor's lien suit and took steps to defend it, but their testimony, as well as that of their clients, is that none of them knew anything about the assumpsit suits and therefore nothing was done towards filing an appearance or defending. The first that appellees knew about those suits, according to their testimony, (and this is not contradicted in any way except by the testimony of the deputy sheriff that he read the summonses loud enough for them to hear and told them that they were served in two suits,) was when they were told by a neighbor, some time in July, 1906, that their farm was advertised for sale, whereupon they saw their attorneys and the matter was looked up. The summonses in the assumpsit suits were returnable on May 28, 1906. June 20, 1906, a default was entered for $1500 in each case against the respective appellees. It ap-

pears that when the default was asked on June 20, the judge, knowing there had been litigation between the parties, called the attention of the local attorneys in Madison county who were representing appellees' attorneys in the former litigation to the fact that a default was about to be taken, and that they told him they had nothing to do with the assumpsit suits and knew nothing about them. There is some attempt made to show that the regular counsel for appellees knew of these default judgments before the May term had closed, but their testimony is positive to the effect that they knew nothing about the matter until after the term had been finally adjourned and the land advertised for sale. The evidence in the record does not contradict them on this point.

The deputy sheriff's return on these summonses in the assumpsit suits indicated that they had been properly served. The rule is established that the return of an officer cannot ordinarily be contradicted. This rule is founded on public policy, for the protection of innocent persons in legal proceedings, although there are cases which are excepted. (*Brown* v. *Brown*, 59 Ill. 315.) The sheriff's return of service does not import absolute verity, but is only *prima facie* evidence of the truth of the matters therein stated. (*Sibert* v. *Thorp*, 77 Ill. 43; *Hickey* v. *Stone*, 60 id. 458.) Where the rights of third persons have been acquired in good faith, the return of an officer showing the service of summons cannot be contradicted, but as against parties acquiring rights with notice of the facts the return is not conclusive. (*Jones* v. *Neely*, 82 Ill. 71.) In a proper case a false return may be set aside in equity. (*Waterbury Nat. Bank* v. *Reed*, 231 Ill. 246, and cases there cited.) In Story's Equity Jurisprudence (vol. 2,—13th ed.—sec. 887,) the rule on this subject is stated as follows: "In regard to injunctions after a judgment at law, it may be stated as a general principle that any facts which prove it to be against conscience to execute such judgment, and of which the in-

235—16

jured party could not have availed himself in a court of
law, or of which he might have availed himself at law
but was prevented by fraud or accident, unmixed with any
fraud or negligence in himself or his agents, will authorize
a court of equity to interfere." (*Higgins* v. *Bullock,* 73
Ill. 205.) The mistake, if any, in this case was one of fact.
A mistake of fact resulting in the recovery of a judgment
may be ground for the interposition of equity in enjoin-
ing or setting aside such judgment. Pomeroy's Eq. Jur.
(3d ed.) sec. 871; 2 Freeman on Judgments, (4th ed.)
sec. 508*a.*

In the case of *Owens* v. *Ranstead,* 22 Ill. 161, this court
had under discussion an equity proceeding in which the
facts and principles involved were very similar to the ones
here under consideration. It was there held that the re-
turn of an officer is only *prima facie* evidence of the facts
therein stated, and that on a proper case made, (such as a
judgment shown to have been obtained by a false return
and without any notice to the defendant,) equity will re-
lieve against the effects of such return. In that case ap-
pellee had two summonses served on him at the same time
by the deputy sheriff and he understood that only one was
served, only one copy being left with him. It would un-
duly extend this opinion to state at length the facts in that
case, but a reference to the decision will show that they are
substantially "on all-fours" with those in this case. The
decision has been quoted many times and the principles
there laid down have always received the approval of this
court.

In *Kochman* v. *O'Neill,* 202 Ill. 110, this court, on a
bill in equity, sanctioned the setting aside by the trial court
of a judgment by default in a damage suit, stating (p. 111):
"Service of summons or an appearance is necessary to
enable a court to render a personal judgment against a
defendant, and the attack upon the judgment in this case
was on the ground that there was a want of jurisdiction

over the person of Mrs. O'Neill for want of such service
or appearance. A judgment may be set aside where a
court has failed to acquire jurisdiction of the person of
the defendant. (*Owens* v. *Ranstead, supra; Grand Tower
Mining Co.* v. *Schirmer,* 64 Ill. 106.) Where the want of
jurisdiction does not appear on the face of the record it
may be shown by evidence outside of the record, provided
the evidence is clear and satisfactory and the rights of third
parties have not intervened. A sound public policy, the
security of litigants and the stability of legal proceedings
demand that the return of the sworn officer shall not be
set aside or impeached except upon satisfactory evidence.
Every presumption in favor of the return is indulged, and
it will not be set aside upon the uncorroborated testimony
of the party upon whom service purports to have been
made. (*Davis* v. *Dresback,* 81 Ill. 393.) Justice, however,
requires that the rules should not be so strict as to pre-
vent all relief against a return which is untrue through
fraud, accident or mistake, and if it is clear from the evi-
dence that the defendant has not been served the judgment
should be set aside." The return in that case showed on
its face that the summons had been properly served, but
the evidence indicated that it had been served on the daugh-
ter instead of the mother.

As was said in *Owens* v. *Ranstead, supra,* the testimony
of appellees as to what took place at the time of the al-
leged service in the assumpsit suits is natural and "impresses
strongly the belief that it was" as stated by them. "At
any rate, they might well have been misled from all the
facts as they are now detailed." The rights of third par-
ties have not intervened in this case. It appears that when
the deputy sheriff started to read his first summons to
Charles Hilt he attracted the attention of the court and
some of the counsel, and there is some testimony that the
court rapped for order. Naturally the deputy sheriff would
drop his voice at this time. We think the weight of the

evidence tends strongly to show that he did not read the summonses distinct and loud enough so appellees could understand what he was reading. Certainly, if he did not read loud enough so they could hear he did not comply with the law and it must be held to be no service. There is nothing in this record indicating that appellees were trying to avoid service. There appears to have been no necessity for the deputy to have read the summons to them in the court room, in the midst of court proceedings. Such a practice is not to be commended. Undoubtedly, if the trial judge's attention had been called to what was actually going on he would have instructed the deputy to serve his papers after court had adjourned. Under such circumstances and surroundings one would hardly expect defendants to understand fully what the deputy sheriff read. Both of appellees are laboring men of little education, as was the appellant in the *Owens case, supra.* They had very little experience in court matters, and apparently their only experience in litigation was that which had grown out of the settlement of their father's estate, and they both testified that in all other cases where they had been served with summons they had been served with a copy. The actions of appellees and their counsel are in entire harmony with what they claim they understood as to the assumpsit suits and inconsistent with any other theory. On this record it is clear that the appellees have a meritorious defense to the actions in assumpsit and that they have had no chance of presenting such defense. They should be given that opportunity, (*Wilday* v. *McConnel,* 63 Ill. 278; *How* v. *Mortell,* 28 id. 478; *Kochman* v. *O'Neill, supra;*) upon the ground that "courts of equity have jurisdiction to decree a new trial at law where a judgment has been obtained by * * * mistake." *Foote* v. *Despain,* 87 Ill. 28.

During the oral arguments before this court a question was raised as to whether the decree of the trial court in this proceeding was a final and appealable one. No au-

thorities have been cited on this question and we have not found any absolutely in point, though the practice in this State has invariably been to consider it a final order. We think it must be so held, because if, after the entering of this decree, the original assumpsit suits (the judgments having been set aside therein) were tried and judgments entered, then if appeal was prayed from those judgments there would be no legal way, on such appeal, to review the finding of this decree in setting aside the judgments. On such an appeal in the assumpsit suits it would have to be presumed that the judgments were properly set aside. Necessarily, therefore, where the judgment of a common law court has been set aside by proceedings in equity, if the right to set such judgment aside is questioned, the chancery decree so holding must be appealed from in order to test that question.

Appellant in his brief makes the point that appellees and their wives were not competent witnesses in these proceedings but does not attempt to point out wherein they were incompetent. The wife of Charles Hilt testified only in the case of Henry Hilt and the wife of Henry Hilt testified only in the case of Charles Hilt. We assume that the argument is based upon section 2 of chapter 51. (Hurd's Stat. 1905, p. 1034.) The testimony they gave comes clearly within the first exception to said section, to the effect that any party or interested person may testify to facts occurring after the death of the deceased person, etc. (*Merchants' Loan and Trust Co.* v. *Egan,* 222 Ill. 494.) Appellant also in his brief contends that the principle of *res judicata* must be held to apply to the merits of this case because the hearing before the probate court on citation against appellees decided the question that appellees did not receive this farm as a gift. There is nothing in this record to justify such contention.

Judged by the evidence before us appellees have a meritorious defense to the common law actions in assumpsit.

We think the weight of the evidence tends to show that they did not understand that the summonses in assumpsit were being read to them, and that they were not legally served. The judgment of the Appellate Court in each case is affirmed.

*Judgments affirmed.*