## Harrod, et al. v. Harrod, et al.

(Decided December 14, 1915.)

### Appeal from Franklin Circuit Court.

1. Judgment—Collateral Attack—Jurisdiction.—When a party seeks, by a collateral attack, to impeach the judgment of a court of general jurisdiction on the ground that he was not summoned in said action, it is necessary that he should allege in his pleading, what, if anything, is shown in the record as to the service and issue of process, because, unless the record itself shows that the court never acquired jurisdiction of him, it will be conclusively presumed that the jurisdiction did attach.

2. Judgment—Collateral Attack.—An attack made on a domestic judgment in any other way than by an appeal, or by proceedings had under sections 344, 414 or 518 of the Code, for the modification or vacation of judgments, is a collateral and not a direct attack.

3. Judgment—Suit to Sell Land of Infant—Collateral Attack.—Where the petition in a suit against the infant to sell his land failed to name the infant in the caption, but named him in the body of the petition, the judgment was not void, and it cannot be attacked in a collateral proceeding.

4. Infants—Process—Mother May Accept Service.—Under section 50 of the Code, which provides that service of summons may be acknowledged by the person to be summoned by an endorsement upon the summons, signed and dated by him, and attested by a witness, the mother of an infant defendant may accept service of summons on behalf of the infant.

5. Judgment—Collateral Attack—Process—Service of—Presumption. —Where the record showed that a summons was served upon one defendant, and that the service of summons was "accepted by the rest of the defendants," it will be conclusively presumed, in a collateral attack upon the judgment, that all of the defendants were before the court; one by actual service, and the others by an acceptance of the service of summons.

6 Infants—Petition of Infant to Have Sale of Land Set Aside— Sufficiency of.—A petition of an infant which alleges that his land was sold in a suit by the administrator of his father's estate, for the pretended purpose of paying the decedent's debts, but really under a fraudulent arrangement between the administrator and a third person, whereby the land was to be bought in by a third person at a price less than its real value and subsequently conveyed to the administrator, and that the conspiracy was carried out, states a cause of action.

FRANK CHINN for appellants.

J. H. POLSGROVE and W. C. MARSHALL for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing.

Marion Harrod, of Franklin county, died in 1899, leaving a widow, Sallie Harrod, and four children, Henry, Irene, Denia Frances, and Turner Harrod, surviving him.

At the time of his death, Marion Harrod owned a farm of 59 acres, which was mortgaged to Thomas Farmer, to secure a loan of $500. He left no personal estate, except a few articles which were set apart to his widow.

The petition to which the demurrer was sustained sets up the facts just mentioned, and further alleges that in July, 1900, John Harrod, one of the defendants, represented to Sallie Harrod, the widow, who was then living on the 59 acre tract with her four infant children, that if she would consent to his appointment as administrator of her husband's estate, he would manage to have the land sold for her benefit and in such a way that it would bring only the amount of the mortgage upon it, and that he would so manage it that the widow could get sufficient time to pay off the mortgage debt; that under said representation, and relying thereon, Sallie Harrod consented that the appellee, John Harrod, might be appointed administrator of her husband's estate, which was done; and, that in pursuance to the agreement, John Harrod, as administrator, filed a suit on July 27th, 1900, in the Franklin Circuit Court against Sallie Harrod, the widow, and her children (except Turner Harrod), all of whom were then under fourteen years of age, and resided with their mother, and neither of them having any guardian, curator, or committee.

The petition further alleges that Dehoney & Graham, who held an unpaid undertaker's bill for $30.00 against the estate, and Oscar Farmer, as executor of Thomas Farmer, were made defendants to that action, and that for cause of action the petition in the old suit alleged that it was necessary to sell the land to pay the debts of the decedent, and the expenses and costs of administration; that a summons was issued to Jefferson county and there served upon Oscar Farmer, executor, but that no summons was served upon Sallie Harrod, the widow, or upon either of her children, or upon anybody representing them, nor were her said children, or any one representing them, in any way notified or advised of the pendency of the suit; and that without any proof, the action was referred to the commissioner of the court for proof of claims, who reported the Farmer debt of $500.00, with interest, and the undertaker's bill of $30.00, above mentioned. And, it is further alleged that Farmer's executor filed his answer, asserting his mortgage and making it a cross-petition, but that no summons was ever issued upon said cross-petition, and that a guardian *ad litem* was appointed for the three eldest infant defendants, who filed his report to

the effect that he was unable to make any affirmative defense for the infants.

The petition further alleges that under that state of the record, the court entered a judgment in the old action, on April 27th, 1901, directing a sale of the 59 acres, or so much thereof as might be necessary for the purpose of paying the debts shown by the commissioner's report; that the land was sold pursuant to the judgment, after due advertisement, but that before the sale was made John Harrod entered into an agreement with the appellees, John Moore and Harvey Gaines, to the effect that they would announce and let it be known to everybody at the sale that the land was to be bought for the benefit of the widow, Sallie Harrod, so as to prevent competition in the bidding, and that they would procure some man who would buy it in for them, instead of buying it in for Sallie Harrod, the widow; that it was then agreed between the appellees that Harvey Gaines was to be the real purchaser of the land at as low a price as it could be bought for, and that he would sell to his co-appellee, John Moore, one-third of the land for a sum sufficient to pay off the mortgage debt, the costs, and Dehoney & Graham's bill of $30.00; that in pursuance of this agreement, and in order to carry it out, Gaines and Moore procured Jasper N. Hutchinson to become the bidder for the land, and buy it in for them, which he did at the price of $677.22; and that there was no other bid at the sale.

It is further alleged that after Hutchinson executed his purchase money bond on February 1st, 1902, he transferred the benefit of his bid to the appellee, Harvey Gaines, to whom the deed was made by the commissioner, and, that it appearing that Turner Harrod's name had been omitted from the commissioner's deed as a grantor, the action was re-docketed on January 31st, 1903, and the commissioner was directed to insert the name of Turner Harrod in the deed as a grantor, which was done.

The petition further alleges that the appellee John Harrod notified Sallie Harrod, the widow, in February, 1902, that the land had been sold to pay the mortgage, and that it brought only sixty dollars more than the mortgage debt, and that she must give possession to Harvey Gaines, the purchaser; that she and her children were moved off the land in February, 1902, and

Harvey Gaines took possession thereof in pursuance to the agreement made before the sale; that Harvey Gaines then sold to his co-appellee, John Moore, about one-third of the tract for the amount which Gaines had paid for the whole tract, and that Moore then took possession of the portion which he had bought, and still has it in his possession.

It is further alleged that Harvey Gaines sold the remaining two-thirds of the land to the appellee, John Harrod, who was the administrator and plaintiff in the original suit, and that John Harrod has ever since had, and is now in possession of said land, claiming to be the owner thereof under his purchase from Gaines; that the 59 acre tract was, at the time of the sale, reasonably worth $2,000.00, and would have brought that sum at a fair sale thereof; but that the appellee Harvey Gaines and Hutchinson prevented the land from bringing a better price by announcing that Hutchinson was buying it in for the widow, Sallie Harrod, when in truth and in fact Hutchinson was really buying the land for the defendants, John Harrod, Harvey Gaines and John Moore, under the agreement hereinbefore recited.

It is also alleged that at the time of the sale in 1900, Henry Harrod was fourteen years of age; Denia Frances Harrod, now Greenwell, was twelve years of age; Irene Harrod, now Phillips, was ten years of age; and Turner Harrod was four years of age; that the agreement above set out, between John Harrod, John Moore and Harvey Gaines, was a fraudulent conspiracy to deprive the widow, Sallie Harrod, and her infant children of the said tract of land, and that it was carried out and resulted in the defendants, Harrod, Gaines and Moore, becoming the owners of said land for less than two-thirds of its value, whereby the appellants were deprived by the fraud, conspiracy and deceit of Harrod, Gaines and Moore of their said land.

The petition herein as above outlined was filed in November, 1914, by Sallie Harrod and her children (Turner still being an infant), against the appellees, John Harrod, John Moore and Harvey Gaines, for the purpose of setting aside the sale and all subsequent proceedings had thereunder in the old suit brought in 1900; and the court having sustained a demurrer to the petition setting forth, in apt terms, the facts above recited, the plaintiffs prosecute this appeal.

Many errors are alleged and relied upon to avoid the effect of the judgment in the old suit of 1900, the chief complaint being that the court was without jurisdiction to make the sale, and, that the judgment was void, and, for that reason, was subject to be attacked collaterally. The broader question of jurisdiction is, however, to be determined by the effect to be given to certain questions of procedure raised upon the old record.

1. But before considering the questions of procedure, it is proper to dispose of appellees' contention that this suit constitutes a collateral, and not a direct, attack upon the judgment in the old suit brought in 1900. We think, however, there can be no doubt that it is a collateral attack, and is, consequently, subject to the rule applicable in that class of cases.

In Baker v. Baker, Eccles & Co., 162 Ky., 694, a separate action was filed, as was done in the case at bar, attacking the validity of a domestic judgment, and the point was made that the procedure constituted a direct, and not a collateral, attack upon the judgment.

But, in overruling that contention, the court said:

"We are also clear that the attack made on this Kentucky judgment was a collateral attack, as a direct attack on a judgment can only be made in the manner pointed out in the Code; that is to say, by prosecuting an appeal or by proceedings had under the Code and in the manner pointed out in sections 344, 414 and 518 for the modification or vacation of judgments. An attack made on a judgment in any other way is a collateral attack. Black on Judgments, volume 1, section 252: Vanfleet on Collateral Attack on Judicial Proceedings, sec. 2; Duff v. Hagins, 146 Ky., 792.''

See, also, Exchange Bank v. Ault, 102 Ind., 322.

With perhaps two exceptions, all of the many cases referred to by the appellants as sustaining their view were cases in which there was a direct attack upon the judgment in question, either by answer filed to the original petition setting up matters of defense, or by exceptions filed to the commissioner's report of sale, or by appeal from the court's order affirming the sale; and the decisions in those cases give no support to the contention that the case stated in this petition constitutes a direct attack. The other two cases relied upon by the appellants have no application to the case before us.

2. Referring to some of the minor errors in the old suit, it is contended that the infant, Turner Harrod, was not named as a defendant in the caption of the old petition, and, that therefore he was not a party to that action.

Sub-section 1, of section 110 of the Civil Code of Practice reads as follows:

"The caption of a pleading must state the name of the court in which the action is brought or pending, and the names of the parties, designating who are plaintiffs and who are defendants, coupled with a word, or short phrase, describing the character of the pleading, with this exception: If there be several parties on either side, a statement of the name of the plaintiff, or defendant, first named in the petition, followed by the phrase, 'etc.,' shall suffice, except in petitions, cross-petitions and answers which make new parties to a set-off or counter-claim."

The old record is made a part of the petition, and it shows that Turner Harrod was named as a defendant in the body of the petition, although he was not named in the caption.

But, in Clift v. Newell, 104 Ky., 396, we held that where the body of a petition stated a cause of action against a defendant named therein, individually, but, who was improperly designated in the caption as guardian, a demurrer to the petition was improperly sustained; and, in Bryant v. Mack, Stadler & Co., 19 Ky. L. R., 744, 41 S. W., 774, it was further held that where the caption of a petition gave the firm name, but not the names of the members of the firm, it was sufficient when the body of the petition set out in full the names of the members of the firm.

In Revill's Heirs v. Claxon's Heirs, 12 Bush, 559, the suit was by the guardian to sell the land of his wards, without naming them either as plaintiffs or defendants in the caption of the petition; and that fact was made a ground for reversal in a direct proceeding.

The court said:

"In this case the infants were necessary parties, their names appeared in the body of the petition, and they were made to petition for a sale of their interest in the land, and the court recognized and treated them as parties. If their names had appeared in the caption, they would have been there merely as formal

parties, speaking by and through their guardian, and, it seems to us, the mere omission of the clerical formality of writing their names at the head of the petition is an objection too unsubstantial to render the solemn judgment of a court a nullity. To have named them in the caption as parties would have been more regular; but they were named in the petition and their interest was disclosed, and, by their guardian, they petitioned for the sale, and naming them at the head of the petition as parties plaintiff could in no way have contributed to the better protection of their interests.

"To hold such judgments and sales void upon grounds so plainly immaterial would render titles acquired under the solemn judgments of courts so precarious that competition in bidding would be prevented, and the interests of infants would not be promoted, but injured.

"We think the infants were parties, and are bound by the judgment so far as its effect depends on that question."

The reasonableness of the foregoing rulings is appreciated when it is recalled that under the ancient chancery practice there was no caption to the bill naming any of the parties, and that under that practice the only caption was the declaration that the bill was addressed to the chancellor, while the names of the parties plaintiff and defendant were stated in the body of the bill. The failure to name the infant, Turner Harrod, as a defendant did not make the judgment void, and it cannot be attacked in a collateral proceeding.

3. Wiley Marshall was appointed guardian *ad litem* for the infant defendants, Henry, Denia Frances, and Irene Harrod, and he made the usual report for the defendants, Henry, Denia Frances, Irene and "Farmer" Harrod, to the effect that after an examination of the case he was unable to make any affirmative defense for the infants. Evidently the recital that one of the infants was named "Farmer" Harrod was a mistake, "Turner" Harrod evidently being intended. But if that be true, it is unimportant. It will be noticed that while Marshall was appointed guardian *ad litem* for only Henry, Denia Frances, and Irene, he reported for all four of the infant defendants. But the voluntary act of the guardian *ad litem* for the other three children in answering for Turner for whom he was never appointed,

availed nothing. Hulsewede v. Churchman's Extx., 104 Ky., 54. But if the infants were summoned, the failure to appoint a guardian *ad litem* for them, or his failure to answer for them, does not make the judgment void; it was voidable only, and the error could have been corrected only, in a direct proceeding for that purpose. Simmons v. McKay, 5 Bush, 25; Keller v. Wilson, 90 Ky., 354; Oliver v. Park, 101 Ky., 1; Norfleet's Admr. v. Logan, 21 Ky. L. R., 1200; 54 S. W., 713.

So this question is subordinate to, and controlled by, the decision of the larger question, whether the infants were served with process.

4. The record in the old suit does not show that any summons was ever issued against Sallie Harrod, the widow, or against any of the infant defendants. The petition in that suit does show, however, that Henry, Denia Frances, Irene and Turner were infants, and had no guardian, curator or committee. The only summons shown by the old record was that issued to Jefferson county against Thomas Farmer's executor. It was served on Farmer's executor on August 20, 1900, and he subsequently filed his answer, counter-claim and cross-petition; but upon that pleading no summons was issued against anyone. The only thing shown by the record relating to the issual or the service of any summons upon the infant defendants is the following return recorded by the clerk upon the equity appearance docket for January, 1900:

"Executed on Oscar Farmer, executor of Thos. Farmer, August 9th, 1900. Service accepted by the rest of the defendants."

The rule is well settled that domestic judgments rendered in a court of general jurisdiction cannot be collaterally attacked unless the want of jurisdiction appears upon the record; and, where a collateral attack is made upon a judgment of a court of general jurisdiction, it is not sufficient to simply allege the absence of a jurisdictional fact; it must be alleged that the record affirmatively shows the absence of the jurisdictional fact. Jones v. Edwards, 78 Ky., 6; Sears v. Sears, 95 Ky., 173; Maysville & B. S. R. R. Co. v. Ball, 108 Ky., 241; Segal v. Reisert, 128 Ky., 117; Dennis v. Alves, 132 Ky., 345; Bamberger v. Green, 146 Ky., 258; Baker v. Baker, Eccles & Co., 162 Ky., 683.

In Vanfleet on Collateral Attack, section 855, it is said:

"An answer to an action on a domestic judgment, where special pleading is required or admitted, must not only deny service and appearance, but must allege what the record shows, or fails to show, on those points. * * *

"Hence, an answer to an action on the record of any court must allege that it does not show service or appearance, and, if the record is that of a superior court, it must allege that it affirmatively shows a want of service."

And, in Black on Judgments, section 271, it is further said:

"When a party seeks in a collateral action to impeach the judgment or decree of a court of superior jurisdiction on the ground that he had no legal notice of the pendency of the action, it is necessary that he should allege in his pleading what, if anything, is shown by the record in relation to the issue and service of process, because, unless the record itself shows that the court never acquired jurisdiction of him, it will be conclusively presumed that the jurisdiction did attach."

In Freeman on Judgments, section 124, the rule is stated as follows:

"Nothing shall be intended to be out of the jurisdiction of a superior court but that which expressly appears to be so. Hence, though the existence of any jurisdictional fact may be affirmatively upon the record, it will be presumed, upon a collateral attack, that the court, if of general jurisdiction, has acted correctly and with due authority, and its judgment will be valid as though every fact necessary to jurisdiction affirmatively appeared. The decisions to this effect are very numerous."

In Dennis v. Alves, *supra,* the record showed that process had been awarded, although it did not show that summons was ever actually issued or served upon the infants. Nevertheless, in that case the court held that the question of the court's jurisdiction to sell the infants' property could not be collaterally attacked.

While the record in the case at bar fails to show that a summons was issued against the defendants, it does show that service of summons was "accepted by the rest of the defendants."

The infants having no guardian, curator, or father, and being under fourteen years of age, the summons should, under section 52 of the code, have been served upon their mother; while under section 50 of the code, which provides that service of summons may be acknowledged by the person to be summoned by an endorsement upon the summons, signed and dated by him, and attested by a witness, the mother of the infants had the right to accept service of the summons. And, in the absence of proof as to how she accepted the service, it will be presumed she did it in the manner pointed out by the code.

We think this recital in the old record brings the judgment in that case within the rule as to its conclusiveness above pointed out, and that it cannot be attacked collaterally.

5. We are of opinion, however, that the petition stated a cause of action upon the ground of the fraud alleged therein. John Harrod was the administrator of this estate; and, taking the allegations of the petition as true, as we must upon the demurrer, it appears that he entered into a fraudulent arrangement by which these infants were cheated out of their inheritance. He, as administrator of their father's estate, represented the infants, and when he bought their land, he became a trustee for them; and no round-about method of acquiring the title can defeat their right.

Without elaborating this idea, and without passing upon any defense that may be interposed, we hold that the petition stated a cause of action in this respect, and that the demurrer thereto should have been overruled.

Judgment reversed for further proceedings.