## Crume, et al. v. Sherman.

(Decided October 17, 1919.)

### Appeal from Nelson Circuit Court.

1. Infants—Guardian Ad Litem.—The clerk has no authority to appoint a guardian ad litem for an infant over 14 years of age until he has been summoned.

2. Infants—Guardian Ad Litem—Failure to Appoint.—Where the infants are summoned, the failure to appoint a guardian ad litem for them renders the judgment voidable not void.

3. Remainders—Judicial Sales—Parties.—A contingent remainderman while a proper party yet is not a necessary party to a suit brought under section 491 of the Civil Code. The only necessary parties are the persons, if in being, in whom the title would have

vested if the contingency had happened before the commencement of the suit.

4. Infants—Guardian Ad Litem—Confusion in Names.—Where the clerk, due to the confusion in names, inserted the name "Leonard" for "Leaman," in the order appointing a guardian ad litem, the error held non-prejudicial.

5. Judicial-Sales—Parties—Jurisdiction—Title.—Where the court has jurisdiction of the parties and the subject matter of the suit and adjudges a sale by the commissioner, which is fairly made, and the sale reported and confirmed, a purchaser of the property can not be divested of it, because the judgment under which the sale was made was erroneous, and this although it be reversed upon appeal. But where the purchaser is the plaintiff or party to the suit, or attorney engaged in the litigation, or an assignee of the judgment a different rule prevails.

C. T. ATKINSON for appellants.

OSSO W. STANLEY, Guardian ad litem.

MORGAN YEWELL for appellee.

J. S. KELLY, Amicus Curiae.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

This appeal involves the title to a farm of about 146 acres, purchased as a reinvestment in the settlement of the estate of M. D. Price, deceased. Under his will said Price devised his property to his daughter, Julia E. Crume, for life, then to testator's nephews and nieces. Julia Crume had six children, Lotha, Leonard, Leaman, Leo, Leona and James L. Crume.

In a suit seeking a sale of the above farm and a reinvestment of the proceeds the several parties in interest appear as plaintiffs or defendants. Letha Crume is twenty-one years of age; Leonard is over fourteen years, the four remaining children being under the age of fourteen years.

Under judgment of court the property was sold by the commissioner to the appellee, Sherman, the sale confirmed and the proceeds invested in what is called the Wilson farm.

Sherman contracted to sell the 146-acre farm to Hinkle & Co., but the latter declined to take the property because of the following defects in the title.

1. William Price, a contingent remainderman, was not before the court.

2. The infant, Leonard Crume, was represented by a guardian *ad litem* appointed before summons was served on him.

3. The infant, Leaman Crume, whose father and mother were plaintiffs in the suit, was not before the court by service of process.

Seeking to overcome these objections the guardian *ad litem* moved the court to correct what he termed certain clerical misprisions in the record, in that the clerk had appointed him as guardian *ad litem* for the infants under fourteen years; summons was served upon him as such and he filed answer for each of them, but through mistake the clerk in entering the order of appointment used the name of Leonard instead of Leaman, though a memorandum had been given the clerk directing him just what to do. The clerk's attention having been called to the error he changed the name of Leonard to Leaman in the summons, but failed to correct the order book. The clerk indicated he would appoint as guardian *ad litem* for Leonard Crume the same attorney who was guardian *ad litem* for the infants under fourteen, but this he likewise failed to do.

Under the presumption he had been appointed for all five of the children, the guardian *ad litem* filed a report for each of them. The filing of this answer led the attorney for plaintiff to believe the appointment had been made. Thus it results that when a separate summons was served upon Leonard, a guardian *ad litem* had already been appointed for him.

The clerk had no authority to appoint a guardian *ad litem* for an infant over fourteen years of age, until he has been summoned. Civil Code, sec. 38; Womble v. Trice, 112 Ky. 533, 66 S. W. 370.

In Harrod v. Harrod, 167 Ky. 308, 180 S. W. 797, it is said that the use of the given name "Farmer" for that of "Turner" in a report filed by a guardian *ad litem,* was unimportant. In that case a guardian *ad litem* was appointed for three infants and answered for four—one for whom he had never been appointed—and the court held that the voluntary act of the guardian *ad litem* of the other three in answering for the one for whom he had never been appointed availed nothing. The court further said that if the infants were summoned the failure to ap-

point a guardian *ad litem* for them renders the judgment. voidable not void.

Because of the confusion of names no guardian *ad litem* was appointed for Leaman, nor was he before the court unless service on O. W. Stanley, the guardian *ad litem,* can be so considered.

In Harrod v. Harrod, *supra,* the record in the old suit, whose effect it was sought to void, failed to show that a summons was issued against the defendants, it did show that service of summons was "accepted by the rest of the defendants," and the court indulged the presumption that the mother had accepted service as she had the right to do. Civil Code, secs. 50 and 52. Under the latter section service can be had on an infant who has no guardian and where the father is dead.

Included in the record is an answer of William Price, a contingent remainderman, and as to whom there was no service of process. There is nothing to show when this pleading was filed. Judging, from its context, it came after the sale because it seeks to ratify and confirm the sale. It is urged he was not before the court, but while a proper party he was not a necessary one.

In a sale under section 491 of the Civil Code, as is the present suit, to obtain a valid sale of the property for reinvestment, the only necessary parties are the persons, if in being, in whom the title would have vested if the contingency had happened before the commencement of the suit.

The court in Goff v. Renick, 156 Ky. 588, 591, 161 S. W. 983, in speaking on this point says:

"The son of the life tenant was the only person in being, in whom this estate would have vested, if his father, the life tenant, had died before commencement of the action. In other words, there is only one contingency, under the terms of the will, on the happening of which, the estate is to vest in the remainderman, and that is the death of the life tenant. When J. Scott Renick dies, the estate cannot go to all the remaindermen named in the will, but only to the remainderman first in order, who is in being at that time. Therefore, if the son of the life tenant is living, he takes, and the others do not, thus making in the father and son, if that contingency happens, an entire and complete estate, which is the first estate; but if, before the death of J. Scott Renick, his son

should die, and there were no other children of either J. Scott Renick or of his son, that would open up another contingency, by which the brothers of J. Scott Renick would take to the exclusion of all others. The estate that would fall to them, in that event, together with the estate held by the life tenant, would necessarily constitute an entire and complete estate in fee, which would be the second estate. But there is further a third and last contingency, dependent upon the second, as the second is dependent upon the first, each subordinate to the other, the last arising in the event of the death of the son of the life tenant and the three brothers, before the happening of the contingency, viz.: the death of the life tenant, in which case the children of the three brothers, or of such of the three brothers as may die, should take as representing their ancestor; that is, their father's part, and in this condition, we have again an entire estate in fee, made up of the life estate and these remainders in the event they should take, which would make the third estate. But, after all, the vesting of the estate is actually determined by the happening of the one contingency, that is, the death of the life tenant."

To the same effect see Walden v. Smith, 179 Ky. 829, 201 S. W. 302.

Though the presence of the answer of William Price in the record is not accounted for, and doubtless came too late, since he was not a necessary party, it can in no wise effect the judgment.

There is a striking peculiarity in the names of Julia Crume's children; the middle name of one and the given name of the other five begin with the letter "L." It is not strange the clerk confused "Leonard" and "Leaman," especially when he had Letha, Leo, and Leona to deal with. It appears the sale was beneficial to the infants, and the proceeds thereof have been invested advantageously in another farm.

In Thomson v. Thomson, &c., 151 Ky. 296, 151 S. W. 658, a guardian *ad litem* appointed for three infants, in filing his report inserted the names of three other infants, for whom he had not been appointed, and the court held this to be an immaterial error. And so in Auxier v. Auxier, 182 Ky. 588, 203 S. W. 310, the substitution of the name "Auxier" instead of "Webb" in the summons was held non-prejudicial.

It is so manifest that the use of the name "Leonard" for "Leaman" in the order of appointment was an error, due doubtless to the confusion in names, a correction of same having been made, in the summons, and the guardian *ad litem* having answered for the infant Leaman, the error is not of sufficient moment or fatality, under the facts disclosed by the record, to render the judgment void. The guardian *ad litem's* answer for the infants in so far as it purported to be an answer in behalf of Leonard Crume was a nullity, as the clerk failed to make the appointment. But summons having been served on Leonard Crume, the judgment as to him is merely voidable not void.

Sherman, the purchaser, not being a party to the original suit, comes under the general rule that where the court has jurisdiction of the parties and the subject matter of the suit and adjudges a sale by the commissioner, which is fairly made, and the sale is reported and confirmed, the purchaser of the property cannot be divested of it, because the judgment under which the sale was made was erroneous and this although it be reversed upon appeal. A different rule prevails if the purchaser was the plaintiff or a party to the suit, or an attorney engaged in the litigation, or an assignee of the judgment. See Webb v. Webb's Guardian, 178 Ky. 152, 198 S. W. 736, for an exhaustive treatment of this subject.

As said in the opinion of the above case:

"A purchaser, at a judicial sale, fairly made, under a judgment of a court of competent jurisdiction, and who is a stranger to the record, up to the rendition of the judgment, has never been held to be other than a *bona fide* purchaser, in the meaning of the section of the Civil Code, above quoted. . . .

"The rule in this state, which protects the integrity of a judicial sale, has become a fixed rule of property, and as said in a number of opinions heretofore cited, that, oftentimes, such sales disturb the conscience of the chancellor, but the rule has been adhered to, too long, to now be changed. It does not appear that a judgment confirming a decretal judicial sale has ever been reversed, by any judgment of this court, for the single reason, that it was made under an erroneous decree, which was afterwards reversed upon appeal, where the court, which rendered the judgment ordering the sale, had jurisdiction of

the parties and the subject matter, and the sale was fairly and regularly made, and completed by the execution and approval of the deed, and the purchaser was a stranger to the record, until the time of the sale.''

The sale appears to have been advantageous to the infants, the proceeds having been invested in another farm. Sherman, the purchaser, has cultivated the farm purchased by him, exercised other acts of ownership over it and entered into a written contract with Hinkle & Co., agreeing to convey the land to the latter, with covenant of general warranty. Sherman being a stranger to the record, his title to the land cannot hereafter be affected by any steps taken by Leonard Crume.

The judgment of the lower court will be reversed with instructions to sustain the motion to correct the clerical misprision complained of, viz.: by substituting the name of Leaman Crume for that of Leonard Crume in the order of appointment of a guardian *ad litem,* so that said order will conform to the summons and thus effectuate the intentions of the parties. The order confirming the report of sale of the Hewitt farm will not be disturbed. Costs incident to this appeal and the correction of the error referred to will be taxed against appellants.