## Ohio Oil Co. et al. v. West et al.

June 21, 1940.

George S. Wilson, Judge.

Cary, Miller & Kirk and Thos. W. Bates for Federal Land Bank.
R. Miller Holland for Ohio Oil Co.

E. B. Anderson and R. M. Sandidge for Oscar L. and Madeline Lively.

Cary, Miller & Kirk for Major Oil Co.

Finley F. Gibson, Jr., J. Leonard Walker, Wilson & Wilson and John Diederich for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

On July 2, 1935, Hobart West and Bettie West, his wife, instituted an action in the Daviess Circuit Court against the Federal Land Bank of Louisville, Hobart's five brothers and sisters and their respective wives and husbands, and the widow and eight children of his deceased brother, William West, for the sale and division of the proceeds of a tract of land described by metes and bounds and alleged to contain 130 acres. Hobart's deceased mother had owned a life estate in the property, and he and his brothers and sisters, the remainder. Hence, at the time the suit was instituted the land was jointly owned by Hobart and his five brothers and sisters, and his eight nieces and nephews, the latter of whom each owned a 1/56 interest. Two of the latter, Frances West and Charles West, were alleged to be infants over fourteen years of age, and three, Leone, Robert, and Marion Wickliffe West, were alleged to be under fourteen years of age. Gilbert West, a brother of the plaintiff, Hobart West, Helen T. West, the wife of Gilbert, Charles Porter, the husband of Mary Porter, and George H. West, a son of the deceased William, were alleged to be nonresidents. It was further alleged

in the petition that on September 13, 1922, the mother, together with her seven children, had executed to the Land Bank a mortgage on the property described to secure an indebtedness of $2,000 to be paid on an amortization plan; that at the time of the institution of the suit there was due the Land Bank $2,208.97, and that plaintiffs had been advised that the mortgage could be continued in force by the purchaser of the land if the past due instalments were paid. The concluding paragraph of the petition and its prayer are of sufficient importance to be set forth:

"Plaintiffs further state that said tract of land as described is indivisible and cannot be divided among the owners thereof without materially impairing the value of same and each interest therein, and said land should be sold as a whole subject to the mortgage of the defendant, Land Bank, and the purchaser permitted to continue in full force and effect said mortgage by complying with the terms thereof; and that the proceeds of said sale be distributed to the owners of said land as their interests appear as set out herein.

"Wherefore, plaintiffs pray that defendant, The Federal Land Bank answer herein and set up the amount of its indebtedness, and they pray that said land as described be sold as a whole subject to the indebtedness to said Bank, and that the purchaser of said land be permitted to satisfy the past due installments and continue said mortgage in full force and effect according to its terms, and that the payment of the proceeds of said sale after payment of the costs of this action be distributed among the owners of the legal title thereof as herein set out, and lastly they pray for all just, proper and equitable relief."

Summons against the resident defendants were duly issued, and, with the exceptions herein after noted, properly executed. At the same time an affidavit for a warning order against the non-resident defendants was duly executed and filed, a warning order made, and a warning order attorney appointed. It should be further noted that in addition to proper allegations with respect to the non-residents, the affidavit contained the statement that the three infants, including Robert, alleged to be under fourteen years of age, resided with

their mother, also a defendant, in Daviess County, and that none of the infants had a guardian, curator, or committee known to the plaintiff. On July 15, 1935, the Land Bank answered setting up its mortgage lien, and praying that the property be sold subject thereto. No summons were issued on this pleading. On March 12, 1936, the Land Bank filed an amended answer making it a counterclaim against the plaintiffs and a cross-petition against its co-defendants, some of whom were proceeded against by warning order. Many questions are raised as to the sufficiency of the affidavit filed as a basis of this warning order, and it is claimed that many of the resident defendants were not served with summons on the cross-petition. However, we do not regard the invalidity of portions of the process issued on the cross-petition as a material factor in the decision of this case, and will not here further discuss it other than by noting that in their attack upon the service of the process against Robert West, who was sued as an infant under fourteen years of age, the appellees established the fact that he was fourteen years of age at the time the original suit was instituted. In its amended answer, counterclaim, and cross-petition, the Land Bank set forth that no payments had been made on the mortgage indebtedness since the payment of the instalment which had become due on March 1, 1932, and that the state taxes on the land for the years 1930 to 1935, inclusive, had not been paid, and that there were no other liens against the property except liens in favor of the National Deposit Bank of Owensboro and the Interstate Bond Company and the Drainage Commissioner for Daviess County who were made defendants and whose liens arose out of taxes paid by the two corporations and drainage taxes due the Commissioner. It prayed for a judgment for its debt amounting to $2,220.40 with interest; that the land be sold in satisfaction of the lien indebtedness; and that a guardian ad litem be appointed for the infant defendants whose interests in the property, as well as the interests and sources of title of the adult owners, had been fully set forth in the pleading.

The Court, on October 27, 1936, entered a judgment establishing the lien debts, directing their recovery, and, by its fifth paragraph, ordering a sale of the property. The fourth paragraph following a paragraph in which the land was specifically described, read as follows:

"Said property cannot be divided without materially impairing its value."

The judgment also contained proper provisions relative to the manner in which the sale should be advertised. The property was sold by the Commissioner of the Court pursuant to this judgment on November 16, 1936. The Federal Land Bank became the purchaser for $2,001, and on January 11, 1937, the sale having been confirmed, received a deed from the Commissioner.

On May 25, 1937, the Bank conveyed the property to the appellant, Oscar L. Lively, retaining a 1/16 royalty interest in the oil and gas rights. The consideration for this conveyance was $2,750, and on the same day the appellant, Lively, mortgaged the property to the Bank to secure a loan of $2,150. Thereafter, Lively and his wife and the Bank executed an oil and gas lease on the property to the appellant, the Ohio Oil Company, and five months later, the Livelys, having repaid the loan from the Land Bank, sold one-half of their royalty interest to the appellant, Major Oil Company.

During the month of December 1938, motions supported by affidavits, to vacate and set aside the judgment and order of sale and all proceedings thereunder were filed by the West heirs named in the petition, with the exception of Urey West, who is not a party to this appeal and whose situation with respect to this record will be later commented upon. Many and varied grounds were urged by the movants in support of their contention that the judgment was void, and much testimony was heard by the Court in support of their claim that they were not before the Court on the cross-petition. It was further contended that because it was neither alleged nor proven that William West, the deceased joint owner, did not leave sufficient personalty out of which the mortgage, or his proportion thereof, could be realized, the Court was without jurisdiction to sell the land in satisfaction of the mortgage indebtedness, since such a sale would be a sale of infants' real estate in satisfaction of the debt of an ancestor and the proceedings were not in accordance with the provisions of Sections 489(1), 428, and 429, Civil Code of Practice. Some of the non-resident adults who were proceeded against by warning order claimed to have been resi-

dents of Kentucky. Further grounds advanced in support of the motions were the failure of the Court to appoint a guardian ad litem for the infants, Frances West and Charles West, and its failure to require proof of the allegations of the petition and cross-petition. Helen T. West, the wife of Gilbert West, claimed that she had not signed the mortgage to the Bank, and one Harlin West, sometimes referred to in the briefs as "Harlem West" and as "Harlem (James Ewing) West," though not named as an heir or joint owner in the petition, appeared by counsel and claimed that he, an adult, had never been a party to the litigation. It is suggested by appellants' counsel that Harlin West and Urey West are the same person since the parties are negroes, and Urey was also called "Ewing." This may be correct as Urey was named in the petition as one of the eight children of the deceased joint owner, William West, and appellees' counsel in their brief so describe Harlin, and assert that Urey West is unknown to them. It also appears that Harlin was sometimes called "James Owen." Other objections were raised to the proceedings upon the cross-petition of the Bank, but, as before indicated, we do not regard these deficiencies as having any material bearing upon the ultimate questions involved.

After responses had been filed by appellants, the Court, on February 24, 1939, sustained the motions referred to, holding that the judgment was void as to the infant joint owners, and hence void as to all of the parties since the Court lacked jurisdiction of the subject matter. The decree also nullified the title acquired by the purchaser and the subsequent grantees, who, by appropriate proceedings, have perfected this appeal.

It is conceded that the appellant, Lively, was a bona fide purchaser, from which it follows, as is impliedly conceded by appellees' counsel, that the title acquired by Lively could not be affected by errors in the proceedings through which his grantor acquired title unless the judgment and the sale thereunder were void. Section 391, Civil Code of Practice; Harris v. Hopkins, 166 Ky. 147, 179 S. W. 14. Though not conceded by counsel for appellants, it is apparent that many of the parties were not properly before the Court on the cross-petition of the Land Bank, principally because of the many deficiencies in one of the affidavits upon which the

warning order against several of the non-residents was based, and we are not prepared to hold that process was not necessary upon the cross-petition in order to render valid the proceedings held thereunder. This case is easily distinguishable from the case of Baxter Realty Company v. Martin, 185 Ky. 697, 216 S. W. 110, 114, by the fact that in that case the infant joint owner was a party plaintiff and "the claim and right of the lien creditor were fully described in the petition." It is true that there are actions other than those instituted for the enforcement of liens (Sections 692, Civil Code of Practice) in which process on a cross-petition asserting a lien debt is not necessary; and, had the original petition in the present case, after describing the debt of the Land Bank, called upon the Bank to set up its claim so that the debt might be paid out of the proceeds instead of alleging that by arrangement with the Bank the property could and should be sold subject to the Bank's mortgage, this case might come within that category. Neither do we agree with counsel for appellees that a sale upon the cross-petition, even though process had been properly issued and executed thereon, would have been void because the Bank failed to allege in its cross-petition that the deceased joint owner did not leave sufficient personal property to satisfy the claim and otherwise ignored the provisions of Sections 489, 428, and 429, Civil Code of Practice. It may be conceded that a mortgagee in enforcing his mortgage against the infant heirs of a mortgagor, must proceed in the manner prescribed by the sections of the Code referred to where the mortgagor is the owner of the complete title to the land covered by the mortgage. However, it would seem wholly unnecessary for a mortgagee so to proceed, where, as here, the mortgagor owned only a fraction of the land, and hence, as between him and the other joint owners, was only liable for a fractional part of the debt. But it is not necessary to decide that question since the petition contained all of the allegations necessary to authorize a sale of the land under the provisions of Section 490(2), Civil Code of Practice, and there is nothing in the record showing that the action was submitted for judgment on the cross-petition. If there had been such an order that fact would not have sustained appellees' repeated assertion that the land was sold on the cross-petition. Baxter Realty Company v. Martin, supra.

From the multiplicity of objections to the proceedings as a whole urged by appellees, it is difficult to segregate those relating to the jurisdiction of the Court to order a sale solely for the division of the proceeds among the joint owners. One objection relating to the proceedings under both the petition and the cross-petition is that no proof was introduced to establish the allegations of the pleadings. However, in the case of Grausz v. Conley et al., 253 Ky. 340, 69 S. W. (2d) 695, 697, which was a suit instituted by an heir for a sale of real estate to pay the debts of the ancestor and to divide the proceeds on the ground that the land was indivisible, a similar contention was raised because some of the defendants were non-residents and no proof had been taken. No infants were involved but non-residents were, and the Court said:

"Another ground of attack on the judgment of sale is that the allegations of the various petitions were not proven against the nonresidents as required by Subsection 3, Section 126, Civil Code of Practice. The court had jurisdiction to sell the property on the ground of indivisibility, regardless of whether there was sufficient proof to show Mrs. Wilkinson did not have enough personal property to pay her debts. The requirement that allegations against an infant be proved is no less imperative, Subsection 1, Section 126, Civil Code of Practice, and yet we have held in numerous cases that the failure to prove indivisibility of the land sought to be sold was not even ground for reversal at the instance of an infant joint owner, where it clearly appeared from the record that it was practically impossible to divide the land in kind so as to give to each joint owner his proportionate part. Bond v. Dean, 223 Ky. 713, 4 S. W. (2d) 721; Pollard v. Hamilton, 179 Ky. 284, 200 S. W. 621; Tichenor v. Rock, 140 Ky. 86, 130 S. W. 989; Scott v. Graves, 153 Ky. 221, 154 S. W. 1084."

The description of the land in the case at bar shows that while it contained approximately 130 acres, it is a long narrow strip somewhat in the shape of a boot; and the fact that there were six adult joint owners each owning a one-seventh, and eight joint owners each of whom owned a one fifty-sixth interest, indicates that the land could not have been divided without mate-

rially impairing its value and the value of the respective interests of the parties. We are not prepared to say that the failure of the Court to require proof of indivisibility was not erroneous. We merely hold that the Court had jurisdiction to adjudge the question, and, having adjudged the land indivisible with the facts disclosed by the description before it, the judgment was not void.

It is also urged that the failure of the Court to appoint a guardian ad litem for the infants, Frances and Charles West, was fatal to the validity of the sale, but the case of Wyatt's Trustee v. Grider et al., 158 Ky. 440, 165 S. W. 420, cited in support of this contention is not properly susceptible to this construction in view of our many decisions to the effect that such an omission, while erroneous, does not render the judgment void. Harrod et al. v. Harrod et al., 167 Ky. 308, 180 S. W. 797; Cain et al. v. Hall et al., 211 Ky. 817, 278 S. W. 152.

It is stated in the brief of appellants' counsel that Gilbert West, Helen T. West, Charles Porter, George H. West, Richard West, Willie May West, and Harlem West were not before the Court on the original petition. Willie May West is the wife of George West, one of the original joint owners, and the relation to the record of the other parties named has heretofore been referred to. The first four were proceeded against by warning order based on an affidavit of the plaintiff stating that they were non-residents of the State and absent, and setting forth their respective places of residence, and the attack on this process seems to be limited to the claim that some of the parties named were in fact residents of the State, and that in his report setting forth his efforts to communicate with them, the warning order attorney referred to Charles Porter as Charles Porter West. It nowhere appears, however, that any of the statements contained in the affidavit were fraudulently made for the purpose of conferring apparent jurisdiction upon the Court, and in the absence of such a showing it has never been held that the failure of a defendant to receive notification of the suit, or that irregularities in the report of a warning order attorney avoided the jurisdiction of the Court acquired by the making of the warning order. The sheriff's return on the summons issued against Richard West and Willie May West on the cross-petition of the Bank showed that a copy of

the summons had been delivered by the officer to each of the defendants, and we are of the opinion that if they were thus properly served with process on the cross-petition they were before the Court for all purposes at the time of the entry of the judgment. Notwithstanding these facts, George H. West was permitted to testify that he had never been a non-resident of the State, and Richard and Willie May West were permitted to testify that they had never been served with summons.

The attack made on the judgment in this case is a collateral attack since direct attacks can only be made by appeal or in the manner prescribed by Sections 344, 414, and 518, Civil Code of Practice. Harrod et al. v. Harrod et al,. supra. Clearly, therefore, the testimony of the defendants sued as non-residents that they were in fact residents of the State was incompetent and un-availing as the proceedings with respect to the warning order were regular on their face. Harrod et al. v. Harrod et al., supra. If we should treat the motion to vacate the judgment as a direct attack thereon as we have sometimes treated somewhat similar motions, and concede that under Section 3760, Kentucky Statutes, the verity of an officer's return may be questioned even in collateral proceedings when mistake is charged, an insurmountable objection would still exist to the effectiveness of the testimony of defendants sued as non-residents that they were, in fact, residents and to the testimony of resident defendants that they were not served with summons, as against a bona fide purchaser of property sold at a judicial sale whose title is sought to be voided by facts not apparent on the face of the record. The rule is well stated in the case of Reeve v. Kennedy, 43 Cal. 643, 650, quoted with approval in Freeman on Judgments, 4 Ed., Vol. 2, Section 509:

"The defendant being a purchaser for value, at a judicial sale, without notice of the extrinsic facts, which are relied upon to impeach the judgment, cannot be affected thereby. No principle is better settled than that a purchaser at a judicial sale, without notice, under proceedings regular upon their face, and had in a Court of competent jurisdiction, is not affected by any mere error of the Court, for which the judgment might be reversed on appeal, nor for any secret vice in the judgment, not appearing on the face of the record, and which

can be made to appear only by the production of extrinsic evidence. He is bound at his peril to inquire whether it sufficiently appears on the face of the record that the Court had jurisdiction to render the judgment, and whether there is a valid execution. But nothing more is required of him. Unless the plaintiff in the action be also the purchaser at the sale, the latter will not be affected by any mere error of the Court, even though the judgment be afterwards reversed for such error; nor can his rights be impaired by any secret vice in the proceedings, resulting from fraud or other similar cause, of which he had no notice. As between the parties to the action, a judgment fraudulently obtained will be set aside and held for naught when the fraud is made to appear. But there would be no security in titles acquired at judicial sales if the rights of a bona fide purchaser, without notice could be overthrown by subsequent proof that the judgment was obtained by fraud, or that the record, which showed a due service on the defendant, was in fact false. The repose of titles, and indeed every consideration of public policy, demands that a purchaser at a judicial sale, without notice, under proceedings regular upon their face, and by a Court of competent jurisdiction, should be protected as against mere errors of the Court, and against secret vices in the proceedings founded on fraud, accident, or mistake, and which can only be made to appear by the proof of extrinsic facts not appearing on the face of the record. No prudent person would purchase at a judicial sale, if he incurred the hazard of losing his money, in case it afterwards should be made to appear that the judgment was obtained by perjury or other fraudulent practices, or that the record on which he relied, as proving a service on the defendant, was in fact false. These propositions are too familiar to require the citation of authorities in their support * * *."

See also Young v. Wiley, 1914, 183 Ind. 449, 107 N. E. 278; Hilt v. Heimberger, 1908, 235 Ill. 235, 85 N. E. 304.

While we have been unable to find any Kentucky case directly in point, the public policy which requires such a rule is clear, since there would be no security in

titles acquired at judicial sales if the rights of bona fide purchases could be overthrown by subsequent proof that the record which showed service of process was in fact false. In any event, the testimony introduced in support of the claim of Richard West and Willie May West that they had not been served with process on the cross-petition was insufficient to impeach the officer's return, as it did not meet the requirement that to accomplish such a result, the evidence must be convincing and clear. Quinn Marshall Co. v. Hurley, 209 Ky. 154, 272 S. W. 402; Nicholson et al. v. Thomas et ux., 277 Ky. 760, 127 S. W. (2d) 155.

The infant, Robert West, was personally served with summons on the original petition, notwithstanding the allegation therein contained that he was under fourteen years of age. However, as before noted, it was shown in the attack on the validity of the proceedings under the cross-petition that he was over fourteen years of age at the time of the institution of the suit, and hence the summons was properly served upon him instead of upon someone for him.

Our conclusions may be summarized as follows:

(1) The Court acquired jurisdiction to sell the land for a division of the proceeds, since the allegations of the petition were sufficient and one or more of the joint owners was properly before the Court by the service of valid process.

(2) That the failure of the Court to require proof of the indivisibility of the land and its failure to appoint a guardian ad litem for two of the infants were errors, the commission of which did not defeat the Court's jurisdiction and thus render the judgment directing the sale void.

(3) That the title of the bona fide purchaser, Lively, was not rendered invalid by errors in the proceedings which did not render the judgment void.

(4) That all of the joint owners, with the exception of Harlem West (provided he is not the same person as Urey West and that Urey was before the Court by valid process), were, on the face of the record, properly before the Court prior to the entry of the judgment, and hence their interests in the land vested in the bona fide purchaser, Lively. Wickliffe v. Dorsey, 1 Dana 462, 31

Ky. 462; Carney v. Yocum's Heirs, 176 Ky. 173, 195 S. W. 482; Harris v. Crowder, 194 Ky. 489, 239 S. W. 788; Webb v. Trimble Bros., 143 Ky. 375, 136 S. W. 870.

It may be conceded that if Harlem West is the son of William West and is not the person sued as Urey West, he was not concluded by the judgment and is still a joint owner of the property as he was not a party to the suit in which the judgment was rendered. If he can establish his separate identity and heirship by proper proof, he may yet sue for a sale of the land and a division of the proceeds.

It follows that the Trial Court erred in setting aside so much of the judgment as decreed the sale of the land and in directing the cancellation of appellants' muniments of title.

Judgment reversed for proceedings consistent with this opinion.

Whole court sitting except Judge Rees.